THE MUTUAL LOAN AND BUILDING ASSOCIATION, PLAINTIFF AND APPELLEE, vs. MILES AND JOHN PRICE, DEFENDANTS AND APPELLANTS.

1. Sureties on the bond of an officer of a private corporation whose office is annual, with power in him to hold until his successor is elected and qualified, are bound only for the year for which he was chosen, and for such further time as is reasonably sufficient for the election and qualification of his successor, and no longer. Guaranteeing the good faith and honesty of such officer "during his continuance in office," means not an indefinite period, or for the time he may possibly hold such office by new elections, but his continuance in office under his then election and for the legal term.

2. Sureties upon such bond are not discharged by the neglect of the officers of the corporation to have, as prescribed by the constitution and by-laws of the corporation, periodical examinations of the books of the officer whose sureties they are. Mere laches, unaccompanied with fraud, is no ground of discharge.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion of the court.

*Cooper & Ledwith* for Appellant.

1870, November 18—Charles B. Graybill was elected Treasurer of the Association.

1871, June 15—Charles B. Graybill executed his bond.

1872, February 15—Charles B. Graybill resigned.

Plaintiffs claim that said Graybill was a defaulter, and bring suit on his bond against Miles and John Price.

1. Defendants claim that they are not responsible for any defalcation occurring previous to execution of bond.

In support of their view, defendants cite the following authorities: 5 Peters U. S. Sup. Ct. Reps., Farrar & Brown vs. U. S., page 573; 15 Peters U. S. Sup. Ct. Reps., U. S. vs. Boyd; *et al.*, page 206; 9 Cranch U. S. Sup. Ct. Reps., U. S. vs. Giles, page 339; 2 American Com. Law, Title Bond, (416) page 400; 1 Pet. C. C. Armstrong vs. U. S., page 46; 9 Wheaton U. S. Sup. Ct. Reps., Miller vs. Stewart, page 234.

2. Defendants claim that they are relieved from *all* liability for any defalcation from June 15th, 1871, to December, 1871, because of the gross laches and irregularities of the officers of said Association in the conduct of the business of the Association.

(1.) They hold that the irregularities consisted in not having monthly and quarterly examinations (or at least definite and periodical settlements) of the Treasurer's accounts by the directors. Constitution and By-Laws, Art. V., Sec. 4; Arts. VII. and IX., Secs. 12 and 4.

(2.) In not having ascertained at an early date that said Graybill's books were irregularly and improperly kept, and thus protected the sureties, the whole corrective being in the hands of the directors, and not in the power of the defendants. 7 Johnson, N. Y., 332; 19 English Law Equity Reps., Watson vs. Alcock, 64.

3. Defendants claim that they are relieved from all liability

for any defalcation that may have occurred between December 3d, 1871, and February 12, 1872, (the former date being the time when the annual election of officers should have taken place in accordance with the by-laws and constitution of the Association, and the latter date being the time when Graybill resigned,) for the reason that Graybill's term of office had expired.

(1.) See general act for creating corporations, (1868) page 119, sec. 2, 6th division. Corporations cannot make by-laws inconsistent with the laws of the State, &c.

Sec. 4th, 5th division. Sec. 5—What officers, and time of elections. Sec. 8—Failure to comply shall cause failure, &c.

Also see 2 Pickering, Mass., 234, 235, 236, and 237; 9 Cranch, Sup. Ct. Reps, U. S. vs. Giles; 2 American Com. Law, 416; By-laws and Constitution of M. L. & B. Asso.

4. In permitting Mr. Fox, with their knowledge and consent, to act as Treasurer in place of Graybill, which was not contemplated by the bond. (Fox acted for at least two weeks prior to Graybill's resignation.) 21 Howard, 75 and 76; 2 Pickering, Mass., 231 to 237, inclusive; 9 Wheaton, 234.

Irregularities also in not having periodical meetings as charged against second persons. Sureties are never held responsible beyond the clear and absolute terms and meaning of their undertaking, and the case must be brought strictly within the terms of the guaranty. Hence any variance or irregularities on the part of the Association, from the clear meaning of the contract as understood by the obligors at the time of the execution of the bond, in the business of the Association, will relieve the securities. Howard's U. S. Sup. Ct., Vov. 21, p. 75, Miller vs. Stewart; 9 Wheaton, 234, Hat Factory vs. Messenger; 2 Pickering, 234.

5. Bond must be construed in view of act of incorporation, Constitution and By-Laws, &c. See act of incorporation, August 8, 1868, section as above. See sections and Articles

of Constitution and By-Laws; 2 Vernon, 518; 2 Pickering, 234 and 235; 21 Howard U. S. Reps., 76.

*Fleming & Daniel* for Appellee.

Suit commenced under the Code. Appeal from judgment entered on report of referee.

To the report of referee both plaintiff and defendants excepted.

Case brought to this court by defendants.

The plaintiff objects or excepts to the report of the referee in this that he finds the defendants not responsible for the default in the payment of $1,380.50 during the interval between the election of said Graybill as Treasurer of said Association and the signing of the bond by the sureties, that is from November 18, 1870, to January 15, 1871, on the ground that a proper construction of the bond would include that time and amount, and on the ground that the failure to pay over being admitted and the amount, the presumption is that the money was in hand at the time the bond was signed by the sureties; if so, then the principal was chargeable with it, and it is brought within the very terms of the condition of the bond.

There is nothing in the testimony to show that the money was not in hand on the 15th of June, 1871. Is it not the presumption that it was in hand, and should not that presumption have been rebutted by defendants?

Facts relied upon to discharge a surety must be distinctly proved to the satisfaction of the court. Walleshlare vs. Searls, 9 Wright, 45; 14 Wright, 37–50.

It has been held in Illinois that when a town officer at the expiration of his term of office made a report showing the amount of money in his hands belonging to the town and the report was approved by the town, he being re-elected and giving a new bond with new sureties, held that

the latter were liable on his failure to account at the end of his second term for the money so reported at the end of his first term. Maley vs. The Town of Metamora, 78 Ill., 394, cited in 20 Am. Reps., 266; Pinkstaff vs. The People, 59 Ill., 148; Charles Pinkstaff, *et al.,* vs. People of the State of Ill., 59 Ill., 149.

The defendants in excepting to the referee's report claim—first, that the laches of the Association by their (its) officers operated as a release to them, the securities, &c.

The laches of obligee in a bond conditioned for the principal obligor to account for and pay over, from time to time, all such tolls as he should collect for the obligees in not properly examining his accounts for *eight* or *nine* years, and not calling upon the principal for payment so soon as they might have done for sums in arrears and unaccounted for, is not an estoppel at law in action against the sureties. 10 East, 34, cited in vol. 5, new ed., 274; Nares and Pepys vs. Bouls, 14 East, 509.

Mr. Justice Story, in speaking of contracts of sureties, said: "It is admitted that mere laches, unaccompanied with fraud, forms no discharge of a contract of this nature between private individuals. Such is the clear result of the authorities." United States vs. Kirkpatrick, 9 Wheaton, 736.

In the opinion delivered in this case he comments upon and overrules The People vs. Jansen, 7 Johnson, 332.

Mere forbearance by the creditor to the principal, however prejudicial to the surety, will not discharge the surety. The same rule applies to officers of corporations. The Pittsburg and Chicago Railway Co. vs. Shaffer, 59 Pa., 350.

To the second exception of defendants, that the sureties were released because the annual election for Treasurer was not held, &c., we say that by the constitution and by-laws of the said Association, Art. V., Sec. 1, page 10, which

reads as follows : " The President and Board of Directors must be elected immediately after the adoption of these articles, and on the second Monday of December annually thereafter, and they, together with all other officers of said Association, shall hold office until their successors are elected and qualified."

The Treasurer, Solicitor, and Secretary shall be elected by the Board of Directors annually. Ibid., Art. 5, Sec. 2, page 11.

When the law provides that one officer shall hold until his successor is qualified, the liability of the sureties continues until that is done. Thompson vs. The State, 37 Miss., 518; Moore vs. Boudinot, 64 N. C., 190.

The Treasurer holds office until his successor is qualified. This is the law of the Association.

By the words of the bond the sureties covenant to be responsible for his acts so long as he continues in office.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

This is an action under the code brought by the Mutual Loan and Building Association against the sureties, Miles Price and John Price, upon the bond of C. B. Graybill, Treasurer of the Association. The bond, after reciting the election, is conditioned " that if the said Charles B. Graybill, his executors or administrators, shall honestly and in good faith serve as such treasurer during his continuance in said office, and hold and dispose of whatever he may receive as such treasurer as the Association or its Board of Directors may direct, and according to the provisions of the constitution, by-laws and regulations of said Association now existing, or which may be by them adopted, and at the expiration of his said office shall pay and deliver over to his successor in office, or any other person duly authorized to receive the same (by the authority of said Association,)

210 SUPREME COURT.

Mutual Loan and Building Association v. Price—Opinion of Court.

all such monies, property and other things, which shall appear to be in his hands, due by him to the said Association, then this obligation to be void, otherwise to remain in full force." The bond is dated the 15th day of June, A. D. 1871. The complaint sets up this appointment, the execution of the bond, the resignation of Graybill on the 12th of February, 1872; that he was then indebted to the plaintiffs in the sum of $2,537.30, and claims damages for $3,000 and costs. It is unnecessary to state in detail the defence made in the answer, or to more fully state the pleadings. They have been treated by the parties as raising generally the question of the liability of the sureties for all and every part of the alleged indebtedness.

Upon a reference, the whole amount of the defalcation was ascertained to be the sum of $2,346.22, and as there was some question as to the date at which this deficit occurred, it was agreed by the parties that the deficit from November 18th, 1870, to June 15th, 1871, was $1,380.00; that the deficit from June 15th, 1871, to December 3d, 1871, was $505.71; and that the deficit from December 3d, 1871, to February 12, 1872, was $450.06. After evidence and hearing before referee, he found that the defendants were not liable for the deficit which occurred before the bond was executed, and that they were liable for the deficit which occurred after it was executed, embracing the deficits from June 15, 1871, to February 12, 1872, and so adjudged. To the report of the referee each party excepted; the plaintiff to so much thereof as excused the sureties for the deficit occurring anterior to the giving of the bond, and the defendants to so much therof as charged them with the subsequent deficits.

The plaintiff's ground of exception was that the referee "ought to have found and reported" that the defendants were responsible for the amount of the admitted default anterior to the date of the bond.

The defendants' ground of exceptions for the charge for the defalcation between June and December, 1871, was because they were "released as sureties on said Graybill's bond by the acts, laches and gross irregularities of said Association, represented by their President and Board of Directors;" and their exception to the charge for the defalcation between December, 1871, and February 12, 1872, was on the ground that they "were released by the fact that the annual election for treasurer was not held as required and provided for by the constitution and by-laws of said Association, and by the act of incorporation, and because of the laches and gross irregularities of said Association."

The exceptions were overruled, the report confirmed and judgment entered thereon. From this judgment this appeal is taken by the defendants, and the errors assigned involve the question whether the action of the referee and of the court in giving judgment for the amount of the defalcation during the two last periods stated was correct.

The plaintiff having taken no appeal, and the action of the court as to the first deficit not having been excepted to by either party, it is not here for review.

The defence of laches here is set up as to all the defalcations of the treasurer for which judgment was given. The officers of the corporation failed to have monthly or quarterly examinations of the treasurer's accounts, as required by their rules and by-laws. Does this relieve the sureties of their liability under this bond? The constitution and by-laws of the Association are mentioned as prescribing the rule and method of their officers accounting. That is the effect of the language used in the bond. Under its terms this examination is made no condition of the liability of the surety, and the neglect of the officers in this respect does not, *under the bond*, relieve the sureties. Does this failure to examine the accounts relieve the sureties under the *general principles of law* applicable to such contract? In the case

of the United States vs. Kirkpatrick, (9 Wheaton, 721,) the sureties upon an official bond of a collector of internal taxes contended that the laches of the government in delaying to call the collector to account at the periods prescribed by law relieved them of liability. While the court held that laches was not attributable to the government, still Mr. Justice Story, in delivering the opinion in the case, expressed very plainly his views as to the liability of the sureties upon a bond of this nature between individuals. He says it is the clear result of the authorities that laches of this character, unaccompanied with fraud, forms no discharge of a contract of this nature between private individuals. Here it is not alleged that there was any fraud. Such laches does not relieve the sureties. 10 East, 34; 14 East, 509; 59 Penn. State, 350. The case cited by appellant from 7 John., 332, maintaining a contrary view, has been overruled. 4 Wend., 574.

The sureties further claim that they are relieved from all liability for any defalcation that may have occurred after December 3, 1871, for the reason that his term of office had then expired, and with its expiration their liability ceased.

The limit of the liability of the surety is the term of office of the principal. This doctrine, as a general rule, we do not understand to be denied by the appellee. Its position is, that under the broad language of this particular bond, and the provisions of the constitution and by-laws of the Association, which are the law of its being when not in conflict with the laws of the State the sureties are bound during the continuance of the treasurer in office; and that as under the law of his office he was to hold until his successor was elected and qualified, his sureties are responsible for all defalcations which may occur anterior to the election and qualification of his successor.

The general statute, under which this corporation is formed, has no provision regulating the terms of office of

officers.     Under the statute this power is in the corporation itself.     Hence the law of the office here is the constitution and by-laws of the company.     These by-laws provide that the treasurer shall be elected by the board of directors annually, and that all the officers of the Association shall hold office until their successors are elected and qualified.     The by-laws further require annual meetings on the second Monday of December, at which the president and directors are required to be elected, and in case of a vacancy in any office, the board of directors are empowered to fill it.     The office of treasurer is therefore an annual office, extending in its regular terms from one annual meeting to another, and in case of a vacancy occurring between annual meetings, the board of directors " fill the vacancy."     In this case the treasurer was appointed on the 15th of June, 1871, by the directors, and according to the by-laws his regular term of office expired on the second Monday in December thereafter.

The question here is, is not this the limit of their liability? Stating the whole question accurately, it is whether a bond given for the faithful performance of an officer's duties during his continuance in office, in a case where the regular term is for one year, the officer to hold until his successor is qualified, is not limited to the time fixed by law for the expiration of the office rather than the time which he may continue in it.     This is a question of no little importance.     We have examined it carefully and accurately, and without entering into any introductory discussion of the general character of the contract of suretyship, we will give the cases covering the subject and dispose of this case as the principles announced require.     The case of the Chelmsford Co. vs. Demarest, (7 Gray, 2.) In this case Demarest was surety on a bond of Phelps, treasurer of the company, the condition of which was that " whereas, said Phelps has heretofore been chosen treasurer of said company : now, therefore, if said Phelps,

during his continuance in said office shall faithfully and punctually perform all the various duties incumbent on him, in his said capacity, and shall account from time to time for all moneys and funds of said company that may come to his hands as treasurer, and if, on ceasing to hold said office he shall deliver over to the directors of said company, or to his successor, all books, records and papers belonging to said office in his possession or custody, and all moneys, notes, securities or funds that may then be in his hands or control, then the foregoing obligation shall be void, otherwise of full force." The statute regulating the term of officers of the company, provided that the treasurer, like all other officers, should be chosen annually, and adds, " and shall hold their offices until others are chosen and qualified in their stead." Demarest, as surety, was sued for defalcations occurring after the expiration of the year. The defence was that his liability was restricted to the " official year only." Mr. Chief Justice Shaw, speaking for the court, says : " The court are of opinion that under the direction of this law Phelps was elected as treasurer to an annual office ; that the bond was a collateral security for the faithful performance of the duties of that office, and that such office being annual, such duties are limited to the term of a year ; but in fixing it to one year we do not understand the statute to mean an exact calendar year or the number of days constituting an astronomical year. It is to be expounded according to the subject-matter, and therefore it must be construed to be for the official year of such corporation or body politic as holds annual meetings, the official year being the term ordinarily from one annual meeting to another. Nor do we think that the further provision above cited—' shall hold their offices until others are chosen and qualified '—substantially changes the character of the office from an annual one to one for an indefinite time. What then is the legal effect of the added clause, ' until others are chosen and qualified ?'

To give it the construction contended for by plaintiffs would annul the previous clause making it annual; but both are embraced in the same sentence. They are equally imperative and obligatory, and if possible both must have their natural effect. Looking again at the subject-matter, and supposing the Legislature to have had in view the actual condition of manufacturing corporations, and their practical working as bodies politic, organized by law, it seems to us that the law regarded these as annual offices; but regarding the inconvenience which would arise if one were to terminate before the other commenced, one was made to continue and terminate at the same precise point of time at which the other commenced, and thus avoid any interval. But some time must elapse after the re-election to enable the officer elect to express his acceptance, and some further time, if giving bond is a necessary qualification, to enable him to procure the execution of the bond. The law having directed that such officer shall be chosen annually, or at the annual meeting, it assumes and pre-supposes that such direction will be complied with, and then the words in question must be construed to mean till the next annual meeting, or meeting at which such annual election is to be made, and such reasonable time afterwards as shall be sufficient to enable the officer elect to procure and deliver his bond and do whatever else is required to complete his qualification; or, if he fails thus to qualify, until the corporation can elect another and cause him to be qualified. In this way both parts of the provision of the statute will have their legal and proper effect. But if the corporation fail to comply with their legal duty of electing a treasurer annually, or if they fail to comply with a provision of law made for their benefit, and do not require him to give bond within a reasonable time after he has signified his acceptance of the election, and if they permit him to go on and act in the office during the whole year, and for succeeding years, without giv-

ing bond, whatever other effect such a course may have on the rights and liabilities of the corporation, it cannot enlarge or vary the obligation of those who have become responsible for the conduct of such officer in performing the duties of an annual office." The case of Dover vs. Tumbly (42 N. H., 69,) was a suit against a surety upon the bond of an annual officer, holding until qualification of his successor. The court sanctioned the view of the Supreme Court of Massachusetts, and disposed of the case accordingly. The courts have held the same doctrine in Delaware. 2 Harr., 195. This, too, is the doctrine of the English cases. 6 East, 507; 2 Bing., 32; 2 B. & A., 431; 2 Saund., 411; 2 N. R., 175.

The bond in this case having been given in June, 1871, the sureties recognize the official existence of the treasurer. 1 Vroom, 73; 3 Dutch, 407; 17 How., 442, and under the by-laws, his term extended to the second Monday in December, and for such further time as is reasonably sufficient for the election and qualification of his successor. The judgment of the court was erroneous in finding the sureties liable beyond this time, and for this reason must be reversed.

The judgment is reversed, and the case is remanded for further proceedings, conformable to law, and not inconsistent with this opinion.