THE MUTUAL LOAN AND BUILDING ASSOCIATION, PLAINTIFFS AND APPELLANTS, VS. MILES AND JOHN PRICE, DEFENDANTS AND APPELLEES.

MILES AND JOHN PRICE, APPELLANTS, VS. THE MUTUAL LOAN AND BUILDING ASSOCIATION, APPELLEES.

1. Sureties upon the bond of the treasurer of a private corporation are not discharged by the neglect of the officers of the corporation to have, as prescribed by the constitution and by-laws of the corporation, examinations of the books of the officers. Mere laches unaccompanied by fraud is no ground of discharge. Mutual Loan and Building Association vs. John Price and Miles Price, 16 Fla., 204, referred to and approved.

2. A general charge of fraud alleged to consist of acts omitted and acts committed, such acts not being stated, is bad upon demurrer. The plea should set up in issuable form the acts committed and the acts omitted.

3. Upon the hearing of a second appeal by parties plaintiff and de-
defendant, matter not brought up by the first appeal, and which
was not the subject of review upon that appeal, may, upon the
second appeal, be assigned as error in a case where the judgment
upon the first appeal was a general reversal of the judgment
awarding a new trial.

4. There is an examination of witnesses, one of them being of counsel
for the sureties upon the bond of the treasurer of a private cor-
poration, the suit being by the corporation against such sureties.
From the testimony of such witness, and from the preceding
record in the case, it is apparent that the word " deficit " is used
by all the parties as indicating the difference between " collec-
tions " and " disbursements," as shown by the books of the
treasurer : Held, That the term " deficit " used in an agreement
made at this stage of the trial must be given the same significa-
tion, and the finding of a referee based upon a different construc-
tion is erroneous.

5. Sureties upon such bond are not responsible for misappropriations
or misapplications of money made anterior to the date of the
bond, unless made so in terms clearly involving such liability.
Where, however, the evidence shows simply that, at the date of
the bond, the difference between collections and disbursements
amounted to a certain sum, the presumption is that the money
was then in the hands of the officer, the surety is responsible, and
to rebut this presumption must show antecedent misapplication.

6. Where there is an appeal by each party from an entire judgment,
and not from a judgment for different things separable in their
nature and separated in the judgment of record, and the ac-
tion of the court and referee is found to be correct as to the
errors assigned upon the one appeal, but incorrect as to matters
involved in the other, the judgment to be rendered here is one of
general reversal awarding a new trial.

Appeal from the Circuit Court for Duval county.

The case was decided below by Mr. Aristides Doggett,
an attorney-at-law, as Referee, and is an action brought
under the Code of Procedure.

The facts are sufficiently stated in the opinion.

*Fleming & Daniel* for the Mutual Loan and Building As-
sociation.

*C. P. & J. C. Cooper* for Price and Price.

Admitting the defalcation of the Treasurer Graybill during the period designated as the " second period " of his administration as Treasurer, defendants, Price & Price, contend that they are not liable on their bond as his sureties, because of the gross irregularities of the officers of the Association in the conduct and management of the business of said Association, amounting to and accompanied with fraud. In the defence set up fraud is distinctly charged. We have a right to prove it, and if proven the sureties are relieved under the decision of this honorable court in this case when it was before the court at the June Term, 1877. See 16 Fla. Sup. Cts. Reps., p. 212, as to the court's opinion on this point, and the case of U. S. vs. Kirkpatrick, (9 Wheaton, 721,) referred to by this court in that connection.

What is fraud, and in what does it consist ? (See 1 Story's Eq. Jurisprudence, paragraphs or secs. 186, 187, 188, 189 and 190 ; 1 Bouvier's Law Dict., title Fraud, pages 612, 613 and 614 ; 2 Vesey Rept., (Chesterfield Exrs. vs. Janson, 155, opinion of Lord Chancellor Hardwicke.) The concealment or suppression of truth is actual fraud.

1 Story's Eq. Jurisprudence, Secs. 204, 205, 206 and 207 and 215, (especially the last section or paragraph cited, 215 ;) also Secs. 216 and 217, and cases cited and notes at bottom of 212th page of 9th edition of 1 Story's Eq. Jurisprudence ;· 11 Wheaton Rept., 59 ; case of Etting vs. Bank of the United States, p. 59 ; 11 Wheaton's Reps., note (d) bottom of p. 68 ; Franklin Bank vs. Cooper, 36 Maine R., 195 ; Lindenan vs. Desborough, 8 B. & Cressw., 586, 592, and application of the principle contained in said case cited in 8 B. & C. to *all* cases under party's obligation to make a disclosure and who conceals material facts, in

9

Sec. 217 of 1 Story's Eq. Jurisprudence, 9 Ed. ; John Pidcock *et al.* vs. Saml. H. Townsend, 3 B. & C., 605 ; Owen vs. Howran, 3 Eng. Law and Eq.ʳR., 121 ; 2 Kent's Com., Sec. 39, p. 483 ; Evans vs. Kneeland, 9 Ala. Reps. 42.

How does fraud occur in the case at bar, and how do the propositions stated and the authorities cited apply ? We answer—

First. That from November 18th, 1870, to June 15th, 1871, Graybill was permitted to act as Treasurer of said Association without entering into bonds as required by the By-laws and Constitution of said Association. See Article 7 of Constitution.

Agreement or stipulation of counsel on file and made a part of the record of this case; admits defalcation of $1,380 prior to date of bond. (See case of Mutual L. &. B Association vs. Price & Price in 16th Fla. Reps., page 210.) The bond was executed on the 15th of June, 1871, after there was an admitted defalcation on the part of Graybill at that time of $1,380, as aforesaid. Nothing was told the sureties of the existence of such deficit in Graybill's accounts. All the surroundings and circumstances of the retention of Graybill as Treasurer were calculated to deceive such men as Price & Price into becoming sureties for Graybill, which they did, finding him an inmate of the office of the firm, one of whose members was the solicitor of the Association, and who was also the legal adviser and counsellor of the Prices, and the inquiries made and the replies given as to safety in going on the bond, and everything that transpired at the time and place the bond was executed, show either gross and unwarrantable ignorance of the business condition of the Association by its officers, or a knowledge of the detalcation of Graybill, and a desire to conceal same, and to involve said sureties by a studied concealment of the fact of such defalcation and a holding

out of Graybill as a person who was trustworthy. In other words, either the directors and other officers of the Association complied with the Constitution and By-laws, and performed their duties as required in and by Article 10 of said Constitution and By-laws, and Article 5, Sections 3 and 4, and were therefore necessarily informed of the defalcation of their Trsasurer, or they did not perform their duty, and their inexcusable ignorance worked a great wrong and injury to the sureties on said Treasurer's bond, so gross as to amount to fraud.

Second. The utter and fraudulent neglect of the President and Board of Directors as aforesaid to see to it that there were monthly and quarterly and annual examinations of the Treasurer's accounts, as required by the Constitution and By-laws, (see Articles 7 and 10) and to see to the disposal at short periods of the moneys on hand by loans, as required by the Constitution and By-laws, so as to prevent an accumulation in the Treasurer's hands, and thereby prevent loss to the Association and increased risk to the sureties, constitute legal fraud and relieves the sureties. 19th Eng. Law & Equity Reps., (cases decided in 1853); Watson vs. Alcock, top page 64 ; 1 Story Eq. Jurisprudence, (under head of constructive fraud) Secs. 324 and 325, and 325 a, 2 Vernon, p. 518. Case of Montague et al. vs. Titcomb & Haskins, defendants in the court below, claim that they are not responsible for any defalcation of the Treasurer occurring prior to June 15th, 1871, the date of the execution of the bond, because their liability under the law begun at that date and did not and could not retroact. In support of which view defendants say that the liability of defendants as to said first period is " res judicata."

See the opinion rendered in this matter. (16 Fla. Reps., pages 211, 213 and 216.) If not considered " res judicata," then said sureties cite in this connection Farrar & Brown

vs. United States, 5 Peters, U. S. Sup. Ct. Reps., page 373 ; 15 Peters, Case of U. S. vs. Boyd *et al.*, 206 ; 9 Cranch, U. S. vs. Giles, page 339 ; 2 American Common Law, Title Bond, page 400 ; 9 Wheaton, U. S. Sup. Ct. Reps., Miller vs. Stewart, page 234.

Any variance from the clear meaning of the contract as understood by the obligors at the time of the execution of the bond, in the business of the Association, will amount to fraud, and relieve the sureties. 21 How., U. S. Sup. Ct. Reps., p. 75, Legall vs. Humphreys; Case of Millen vs. Stewart, 9 Wheaton, 680 ; Hat Factory vs. Messenger, 2 Pick., 234.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

In this case both plaintiff and defendants in the Circuit Court appeal from the judgment rendered. This opinion embraces both appeals. The case was before this court upon an appeal by Miles and John Price at June Term, A. D. 1877, 16 Fla., 204, the defendants not appealing. For a full statement of the case as then presented see the opinion there rendered. It is an action under the *Code* brought by the Building Association against Miles and John Price as sureties upon the bond of C. B. Graybill, Treasurer of the Association.

We first examine the case of the sureties.

The general defence made in the first trial was that the sureties were released by the acts, laches and gross irregularities of said Association represented by their President and Board of Directors. We there held that laches of the character set up unaccompanied with fraud did not discharge the sureties. The case being remanded for new trial, the sureties proposing to bring their case within the law of the contract as fixed by this court, amended their answer

as to the matter of fraud. To this portion of their answer there was a demurrer, which being sustained the defendants allege this action as error. The portion of the amended answer proposing to set up fraud and to which the demurrer was sustained consists of two paragraphs, the first and third. The first is: "That the plaintiffs were guilty of great laches and gross irregularities, accompanied with fraud in the management of their business from June 15th, 1871, to the second Monday in December, 1871, in this that they failed to have the monthly, quarterly and annual accountings with their Treasurer, Charles B. Graybill, and compelling him to make his monthly, quarterly and annual reports, and otherwise requiring him to perform his duties as such Treasurer in accordance with the By-laws of said Association, in connection with the finances of said Association, and that they failed to investigate his accounts and financial standing, through the proper committee at the times prescribed, so as to have insured his honesty and the protection of his sureties as contemplated and provided for by said By-laws."

The acts here recited as constituting the fraud complained of show nothing more than neglect of the officers to examine the books and to compel quarterly, monthly and annual reports of the Treasurer, and acts of like character. What is said as to this matter in the previous opinion of this court covers the question here presented. (16 Fla., 211.) This is not the fraud contemplated by the law to excuse the sureties.

The third paragraph of the answer is as follows: "And (upon) other good and sufficient grounds of fraud which were indicated and shown by the acts of commission and omission of said plaintiffs through and by their authorized officers and agents in connection with Charles B. Graybill as their Treasurer, and in connection with the management

of the finances of said Association, and the use and application of its moneys during the time plaintiffs seek to bind said defendants as sureties as aforesaid. All of which fraudulent acts of omission and commission defendants here set up as defences."

A general charge of fraud consisting of acts omitted and acts committed, such acts not being stated, is bad upon demurrer in that it does not allege in issuable form the acts omitted and the acts committed. There was no legal defence in either paragraph, one or three, of the answer, and the demurrer thereto was properly sustained.

What has been said disposes of the first assignment of error made in the appeal of the sureties. The other assignments of error may be considered together. They are as follows: 2. The referee erred in finding and reporting in favor of the plaintiff and awarding against the defendants the amount of the deficit of the Treasurer, Graybill, during the second period as agreed on, to-wit: from the 15th day of June, A. D. 1871, the date of the execution of the bond, to the second Monday in December, 1871, the time for the annual election of officers of said Association under its Constitution and By-laws. 3. The court erred in entering up judgment against said defendants for the amount, principal and interest, so found against them by said referee, to-wit: the sum of eight hundred and sixty-seven dollars and forty-two cents, together with costs.

It will be found by reference to the opinion rendered in the former appeal that the sureties were held liable for the sums of money, from the payment of which they then and now seek to excuse themselves. We discover no material change in the testimony, and the law as there announced sustains the action of the court and referee in the present trial and judgment so far as this matter is concerned.

This disposes of the appeal of the sureties. We discover no error as to them.

*Appeal of the Mutual Loan and Building Association.*

There is a preliminary objection made to the hearing of this appeal by the sureties upon the ground that the subject-matter of it, the liability of the sureties for the first deficit, was adjudicated upon the former appeal.

The sureties are mistaken in this position. The plaintiff objected and excepted to the action of the referee in reference to the matter as to which they now appeal, but they took no action showing a desire to reverse the judgment of the court by seeking in the recognized legal method a review of it here. We state in the opinion rendered upon the former appeal that the matter was not here for review. Fitzhugh *et al.* vs. McPherson, 9 G. & J., 50, 51 ; Cumberland Coal and Iron Company vs. Sherman, 20 Md., 131.

The judgment rendered in the Circuit Court from which the former appeal was taken was an entire judgment, and the reversal here was a general reversal. The judicial mind was not applied to this question, and the matter is open now for consideration. The record so far as it is necessary to understand the questions raised upon the appeal of the Association is as follows :

The counsel for the respective parties agreed upon the trial of this case—"First. That from November 13, 1870, up to June 15th, 1871, the deficit amounted to $1,380.50." "Second. That the cash deficit from June 15th, 1871, to December 3, 1871, amounts to $502.72." "Third. That the cash deficit from December 3d, 1871, to February 12th, 1872, amounted to $450.06."

The questions raised upon this appeal depend upon the construction and meaning of the term "deficit" and the lia-

bility of the sureties for the first deficit mentioned in the above agreement.

The bond given is dated the 15th June, 1871. Are the sureties liable for the deficit which it is agreed amounted to $1,380.50 up to that date? This is the question involved. The law upon this subject cannot be better stated than it was by the Supreme Court of the United States in the case of Farrar vs. The United States, 5 Pet., 389. That court then said: "For any sums paid prior to the execution of the bond, there is but one ground on which the sureties could be held answerable, and that is on the assumption that he (the principal) still held the money in bank or otherwise." Upon the contrary hypothesis he had become a defaulter to the government and his offence was already consummated. If intended to cover past dereliction, the bond should have been made retrospective in its language. The bond in this case we do not think has a retrospective operation. It recites that the principal had been chosen and elected Treasurer of the Mutual Loan and Building Association, by reason whereof he will receive or have control, or be chargeable with money, property or other things of said Association, and the condition is that he shall honestly and in good faith use as such Treasurer during his continuance in said office, and hold and dispose of whatever he may receive as such Treasurer, as the Association or its Board of Directors may direct, and according to the provisions of the Constitution, By-laws and regulations of said Association now existing, or which may be by them adopted, and at the expiration of his said office shall pay and deliver to his successor in office, or any other person duly authorized to receive the same, (by the authority of said Association) all such moneys, property and other things which shall appear to be in his hands and due by him to the said Association. The language restricts the

obligation to what he will receive and to his future conduct as Treasurer. Viewing the obligation in this light, the sureties here insist that for the first "deficit" they are not liable, while the Association contend that they are to be charged with it. If the term deficit here means a sum appropriated by the officer, and as to which he was a defaulter at the time the bond was executed, the sureties are not liable. If, however, the word deficit means a balance appearing to be due upon the books of the Treasurer, that being the difference between the receipts and disbursements as shown upon the day of the execution of the bond, then presumption is that the money was in the custody or control of the Treasurer upon that day, and in the absence of testimony showing the previous misapplication of the funds or property by the officer, the sureties are liable. United States vs. Eckford's Extrs., 1 How., U. S., 263; Hetton vs. Lane, 43 Texas, 288.

The sureties contend that the term "deficit" is ambiguous; that as used in this agreement it means so much money wanting at the dates specified; that these amounts had been then appropriated and misapplied by the Treasurer, and that parol testimony is not admissible to show that its meaning was deficiency as shown by the accounts, and not deficiency accompanied by misapplication. It is evident that if the subject-matter to which the term was to be applied was funds misapplied, then the sureties are not liable, but if the subject-matter as to which the term "deficit" was used was the accounts of the Treasurer without reference to misapplication, then, as the case now stands, there being no evidence of actual anterior misapplication to the amount named, the sureties are now liable upon the presumption stated. We do not think the term deficit necessarily or ordinarily implies misapplication. Worcester gives its meaning as "want, deficiency in an account or a

number." Johnson gives its meaning as "want, deficiency." And Webster defines it as "want, deficiency, as a deficit in the taxes or revenue."

The word deficit may have either of the significations contended for, and evidence of the surrounding circumstances, so far as they indicate the nature of the subject, is, in the language of the books, "a just medium of interpretation of the language and meaning of the parties in relation to it." (1 Greenleaf on Ev., 13th Ed., §286 ; Canal Co. vs. Hill, 15 Wend., 94.) So also is it true, as insisted upon by plaintiff, that "where the agreement in writing is expressed in short and incomplete terms, parol evidence is admissible to explain that which is *per se* unintelligible, such explanation not being inconsistent with the written terms." (1 Greenleaf Ev., 13th Ed., §282.) Now the term "deficit" may not only indicate an amount wanting, as shown by the books, to balance the officer's account, but the fact may be that such amount had been then misappropriated by the officer and evidence showing the true state of facts is admissible. We do not in this case, however, see any necessity for any further testimony upon the part of the plaintiff to make out its case. The record discloses that anterior to the execution of this agreement one of the defendants' counsel had been examined as a witness ; that he had prepared a statement from the books showing the amount due by the Treasurer at the several dates indicated, and throughout his testimony the term deficit indicates sums shown to be due by the books and not amounts which he, or any one else, knew to have been before that time misapplied. During the progress of the trial, and after the defendants had indicated what was meant by this word in their opinion, through their witness, he being one of their attorneys, this agreement is made. The result is that defendants, by their own witness and attorney, having given a meaning to the

word deficit, and their own testimony introduced upon the trial before this agreement was entered into, showing that the excess of " collections " over " disbursements " as shown by the books was the signification given to this word by all the parties anterior to the agreement, it must be given the same signification in the agreement. The case as we view it is, therefore, one in which the finding of the referee and the judgment of the court should as to this sum have been for the plaintiff, and for that reason the judgment must be reversed and a new trial awarded. As a matter of course the surety may prove upon the new trial that the misappropriation occurred anterior to the execution of the bond. It was contended by the sureties that the meaning of the term " deficit " was fixed by this court in the previous appeal. As applicable to the first deficit we distinctly stated that there was no appeal, and hence the present question was not before us.

With reference to the other periods we did not understand it to be denied that the misapplications had occurred as claimed. The question there was one of law as to admitted misapplications of the society's funds and the defence was laches and failure to hold the annual election of the Treasurer as required by the By-laws.

The judgment here is an entire judgment. It is not for different things separable in their nature and separated in the record. This judgment is upon this record erroneous to the extent indicated by this opinion. We cannot see how it can be divided by us and affirmed as to the second deficit and reversed as to the first, when the sums are not distinguished in the judgment, nor can we send a part of the case back for new trial, leaving one section of the cause disposed of here and the other pending in the Circuit Court. Story vs. New York and Harlem R. R. Co., 2 Selden (6 N. Y.), 91.

The judgment is reversed and new trial awarded, the defendants in the action to pay the costs of each appeal.