IDA COUNTY SAVINGS BANK, Appellee, v. C. J. SEIDENSTICKER and A. F. KNEPPER, H. A. KNEPPER and MARGARET KNEPPER, as executors of the will of F. C. Knepper, deceased, Appellants.

**Savings banks:** CASHIER'S BOND: LIABILITY OF SURETIES. The bond of a savings bank cashier must be construed in connection with the terms of his appointment, and if his election to the position is for a definite period, the bond ceases to be effective on the expiration of the term and the sureties thereon are not liable for his defalcation occurring thereafter.

**Account:** APPLICATION OF PAYMENTS. Payments on an account, in the absence of an agreement or direction to the contrary, will be applied to the satisfaction of those items of charge which are earliest in point of time.

*Appeal from Ida District Court.*— HON. Z. A. CHURCH, Judge.

SATURDAY, MARCH 11, 1905.

ACTION at law upon a bond given by the defendant Seidensticker for the faithful performance of his duties as cashier of the plaintiff bank. Judgment for plaintiff upon a directed verdict, and the defendant surety appeals. Since the appeal was taken, the surety F. C. Knepper has deceased, and his representatives have been substituted as appellants.— *Reversed.*

*M. J. Wade, T. F. Bevington,* and *J. L. Kennedy,* for appellants.

*Will E. Johnston, Wright & Call,* and *Hubbard & Burgess,* for appellee.

WEAVER, J.— In the year 1893 the First National Bank of Ida Grove, Iowa, ceased to do business, and transferred its assets to one J. T. Hallam. Soon thereafter Hallam, who had been conducting a private bank, united with others to organize the plaintiff bank, himself becoming the owner of something more than two-thirds of the capital stock. The defendant C. J. Seidensticker, who had been employed in the national bank, and subsequently by Hallam in his private bank, became the plaintiff's first cashier, and as such gave the bond now in suit, with the defendant F. C. Knepper as his surety. The condition of the bond is in the following words: " The condition of this bond is such that, Whereas, the said Chas. J. Seidensticker has

been elected cashier of the Ida County Savings Bank, within Ida Grove. Now, if he shall well and truly perform the duties of the office of cashier, according to the by-laws of said bank, and the law of the State of Iowa governing savings banks, and exercise all reasonable care and diligence, and the preservation and lawful disposal of all moneys, books, papers and securities belonging to the bank, then the bond to be void, otherwise of force and effect." At the beginning of each bank year the board of directors re-elected the cashier, and he continued in the position until March, 1897, when he absconded. During all the period of Seidensticker's service in this capacity, Hallam, who has since died, was the president and the active superintendent or managing officer of the bank. On November 20, 1897, the plaintiff brought an action upon said bond, alleging that, in violation of his duties as cashier, Seidensticker had taken, appropriated, and converted to his own use moneys of the bank to the aggregate amount of $7,959.41, for which sum judgment was demanded against him and his surety. The surety denies liability on various grounds, to which reference will be made in the progress of this opinion. A reversal of the judgment entered below upon a directed verdict is claimed upon numerous alleged errors.

I. The first question to be considered is whether the bond sued upon created a continuing obligation upon the surety so long as Seidensticker might be retained as cashier of the bank, or is to be limited in time to the first year of said cashier's service. To properly answer this inquiry, reference to the statute governing savings banks, and to the facts and circumstances attending the giving of the bond, becomes necessary.

1. SAVINGS BANKS: cashier's bond; liability of sureties.

The statute invests savings banks with the power to appoint such officers, agents, and employés as the business transacted by them may require. Code, section 1844. It

also provides for the annual election of a board of directors (section 1846), and makes it the duty of such board at their first meeting, and as often thereafter as the by-laws require, to elect from their own number a president and vice president for the ensuing year, and appoint a treasurer or cashier and such other officers and employés as may be required, who shall hold their office during the pleasure of the board, and give such security for the performance of their duties as may be required of them by the by-laws (section 1845). The by-laws of the plaintiff bank, as offered in evidence, repeat in substance the statutory provision above cited, and provide in general terms that the president, cashier, and employés of the bank shall give bonds in such sums, with sureties, as the board of directors shall approve. The board is also given power by a majority vote to remove at any time any or all of the officers or employés and appoint others in their stead. In actual practice the board adopted the plan of electing or appointing the cashier annually at the time of the regular annual election of president and vice president. The records of the corporation show that the first regular meeting of the board of directors was held on May 30, 1893, and that Charles J. Seidensticker was "appointed cashier until the next annual election." At the same meeting it was voted that the president be required to give bond in the sum of $50,000, and the cashier in the sum of $10,000, to be approved by the board. The cashier's salary was at the same time fixed at $1,000 per year until further ordered. The second annual meeting occurred on May 31, 1894. The record of this meeting recites that a motion that Charles J. Seidensticker "be elected cashier for the next year" was carried. At the third annual meeting, held June 4, 1895, it is recorded that a motion that "Charles J. Seidensticker be appointed cashier for the ensuing year" was carried, and that his salary was fixed at $840 per year. No record seems to have been preserved of the annual meet-

ing of the year 1896.   Seidensticker testifies that such a ˙
meeting was held and he was again reappointed for the
ensuing year, and this is not disputed.   These four suc-
cessive appointments cover the entire period of the cashier's
service.   The bond in suit was executed after the first elec-
tion, and was approved and accepted by the board of di-
rectors about June 27, 1893.   It was never renewed, nor
was any other bond or security for the performance of his
duties ever required of the cashier while he remained in
the bank's service.   It is the contention of the surety that the
bond is to be construed with reference to the term of the
appointment or election of Seidensticker to the office of
cashier.   In other words, the proposition is that, Seiden-
sticker having been appointed to serve in that capacity for
the period of one year, subject, of course, to the reserved
right or power of· the board of directors to remove him
at an earlier date, the bond given to secure his faithful
discharge of the duties of his office will not operate to
bind the sureties for defalcations occurring after the ex-
piration of such term and under another and different ap-
pointment.   The question is one upon which there is some
apparent confusion in the cases, but, when closely exam-
ined, the want of harmony is apparent rather than real.

It is elementary that a surety, especially one who as-
sumes that relation as a mere matter of accommodation
to one or both of the principal parties, is entitled to rely
upon the strict terms of his contract, and his liability will
not be extended or enlarged by implication.   *Miller v.
Stewart,* 9 Wheat. 680, 6 L. Ed. 189.   It is equally well
settled that, in the absence of stipulations making the con-
trary intention clearly and unequivocally apparent, the ob-
ligation of a surety upon an official bond does 'not extend
beyond the term or period of service to which such officer
had been appointed or elected when the bond was given.
*Wapello Co. v. Bigham,* 10 Iowa, 40; *Fresno Co. v. Allen,*
67 Cal. 505 (8 Pac. Rep. 59); *South Carolina Society v.*

*Johnson,* 10 Am. Dec. 644; *Chelmsford Co. v. Demarest,* 7 Gray, 1; *Moss v. State,* 10 Mo. 338 (47 Am. Dec. 116); *Bigelow v. Bridge,* 8 Mass. 275. But there is a class of cases in which the application of the last-mentioned rule has given rise to differences of opinion. They relate generally speaking to officers for whom the law which authorizes their appointment has fixed no definite term of service, and are removable at any time at the pleasure of the appointing power, but are nevertheless appointed and reappointed to successive definite terms, as was done in the case at bar. A line of decisions is to be found which appear to hold with more or less strictness that a bond given by such officer upon his first appointment is a continuing obligation upon the surety, unless the contrary intention is clearly manifest in the terms of the instrument. The case most often cited in support of this holding is *Amherst Bank v. Root,* 2 Metc. (Mass.) 522; which was an action upon a cashier's bond. The statute of Massachusetts at that time authorized the board of bank directors to appoint a cashier and other officers, who should " retain their places until removed therefrom or others are appointed in their stead." The defendant Root was appointed cashier from year to year for several years, but gave no bond, save the one made to the bank upon his original appointment. That bond recited generally that Root had been appointed cashier, and was conditioned upon his faithful performance of the duties of the position. The sureties were directors of the bank. It was held by a divided court that an action would lie upon the bond for the cashier's default, which occurred in the later years of service. The majority opinion concedes the general rule that the bond of an officer appointed for a fixed or limited term imposes no obligation on the surety for the conduct of his principal under a reappointment, but gives controlling force to the statute providing that a cashier " shall retain his office until removed therefrom," and shall give bond " conditioned for

the faithful performance of the duties of his office." "This provision," the opinion says, "regulates the office of cashier, and fixes the term by which it is held," and upon this theory of the effect of the enactment it was decided that the bond must be held to have been given to cover the entire time of the cashier's service until he should be " removed " or another be " appointed in his place."

Even if we accept this construction as correct, we think our statute, which provides that the cashier shall hold his office " at the pleasure of the board," is not the equivalent of the Massachusetts act. A statute which unequivocally gives the cashier the right to retain his office until removed may, without violence to the meaning of these words, be held to imply an absence of authority in the board of directors to require an annual appointment or reappointment of a cashier whose services are found to be satisfactory, while a provision that he shall hold his office at " the pleasure of the board " does not have that obvious effect. It is a fair construction of this provision to say that, while retaining the right to remove him at any time, the board may properly pursue the plan of appointing or employing a cashier for a year at a time, and make the annual reappointment a condition precedent to his right to continue in such position.

That the majority opinion in *Amherst Bank v. Root* is made to turn upon the construction of the local statute has been distinctly held by the Massachusetts court in *Richardson School Fund v. Dean,* 130 Mass. 242. In that case the charter of a corporation provided that its trustees should be chosen for a period of three years, and that other officers should be appointed as the by-laws might provide. No by-laws were adopted, or, at least, none appear in the record; but it was shown that " by the uniform practice " of the corporation its treasurer had been chosen at regular triennial elections " for the ensuing term of three years." Under these circumstances it was held that the bond given

by the treasurer under his first appointment, though not containing any express time limit to its operation, was not a continuing obligation, and did not bind the surety for defalcations occurring after the expiration of the first term of three years.    The same construction is placed upon *Amherst Bank v. Root* in *Welch v. Seymour,* 28 Conn. 394, *Chelmsford Co. v. Demarest,* 7 Gray, 1, and *Bank v. Briggs,* 69 Vt. 12, 37 Atl. Rep. 231, 37 L. R. A. 845, 60 Am. St. Rep. 922.    The case of *Exeter Bank v. Rogers,* 7 N. H. 21, is somewhat less in point than the Root case. While, under the peculiar circumstances there disclosed, the bond was held to continue through a long series of years, the opinion appears, impliedly at least, to except from the rule there approved cases of the character of the one before us.    It says that " when an office is held at the will of those who make the appointment, and is not limited to any certain term, then the bond is presumed to be intended, if nothing appear to the contrary, to cover all the time the person appointed shall continue in office under the appointment."    As the cashier in the present case, though holding at the will of the directors, nevertheless held by an " appointment limited to a certain term," it would seem to follow that his bond given upon such appointment is not within the rule of the New Hampshire precedent.

Of the other cases cited by the appellee in this connection, we will speak only of *Westervelt v. Mohrenstecher,* 76 Fed. 118, 22 C. C. A. 93, 34 L. R. A. 477, which was an action upon the bond of the cashier of a national bank.    It was there decided that the annual re-election of the cashier did not operate to terminate the obligation of his bond given at the time of his first appointment.    This holding was based in part upon the Act of Congress which makes the duration of service of bank officers indefinite and subject to be terminated at the will of the directors, and in part upon the peculiar language of the bond, which was expressly conditioned for the faithful performance of

duty by the cashier "for and during all time he shall hold the office of cashier of the said bank." This, it will be noted, is a much broader and more sweeping obligation than is expressed in the bond in suit. It may also be said, with reference to the last-cited case, that it seems, in argument, to carry the idea of the continued obligation of the surety upon such bonds beyond the limit expressed in any of the other precedents called to our attention. In an action upon a similar bond the Vermont court carefully reviews the authorities and reaches the opposite conclusion. Speaking of the annual election of an officer who is subject to removal or displacement at the will of the appointing power, the opinion well says:

The provision that an officer may be dismissed at pleasure can apply as well to an appointment limited to a given time as to an appointment to an indefinite period. It does not impliedly prohibit the fixing of a time beyond which the appointment shall not extend. Its effect is simply that the appointment, however made, shall be terminated at the pleasure of the appointing power. An appointment may be made which, if not previously terminated by the action of the board of directors, will continue for the period designated and expire by its own limitation. There is nothing in the statute which requires us to hold that this surety contracted with reference to an unlimited period when the appointment was in terms for a specified time. The cashier's re-election was something more than a meaningless expression of the pleasure of the directors; it was the filling of a vacancy occasioned by the limitation of their previous appointment.

It is difficult to avoid the force and justice of this reasoning. It finds support also in the following cases: *O'Brien v. Murphy,* 175 Mass. 255 (56 N. E. 283, 78 Am. St. Rep. 487); *Bigelow v. Bridge,* 8 Mass. 275; *Union Co. Sav. Inst. v. Ostrander,* 163 N. Y. 430 (57 N. E. 627); *Moss v. State,* 47 Am. Dec. 116; *Bank v. Hunt,* 72

Mo. 597 (37 Am. Rep. 449); *South Carolina Society v. Johnson,* 10 Am. Dec. 644; *Mutual Loan & Building Ass'n v. Price,* 16 Fla. 204 (26 Am. Rep. 703); *Treasurer v. Mann,* 34 Vt. 371 (80 Am. Dec. 688); *Citizens' Loan Ass'n v. Nugent,* 40 N. J. Law, 215 (29 Am. Rep. 230); *Wardens v. Bostwick,* 5 B. & P. 175; *Kilson v. Julian,* 4 E. & B. 853; *Liverpool W. Co. v. Atkinson,* 6 East. 507; *Arlington v. Merrick,* 2 Saund. 403; *Peppin v. Cooper,* 2 B. & A. 431; Theobold on Principal & Surety, section 82; *M. & M. Co. v. O. F. Hall Ass'n,* 48 Pa. 446; *Curling v. Chalkeen,* 3 M. & S. 502.

Few, if any, of these cases are quite parallel in their facts with the one we are considering, but they amply sustain the rule, to which we adhere, that a cashier's bond which does not expressly limit the period of its operation must be read in connection with the terms of the appointment under which such cashier holds his office, and, if such appointment be for a definite period, the bond ceases to be effective upon the expiration of the term so designated. The reasoning upon which this rule·is based seems to be sound, and the rule itself places an undue burden upon no one. He who is requested to become surety upon the bond of a neighbor or friend who has been made cashier of a bank under an appointment expiring in one year or other short period may willingly do so where he would very reasonably refuse to assume an obligation which might continue for a lifetime. Before assuming the obligation, the surety may reasonably inquire as to the time and terms of his principal's appointment, and rely upon the actions of the corporation in that respect. To hold otherwise is to set a trap for the unwary. Says Chancellor Kent:

It is a well-settled rule, both at law and in equity, that a surety is not bound beyond the present terms of his contract. This rule is founded upon the most cogent and salu-

tary principles of public policy and justice. In the complicated transactions of civil life the aid of one friend to another in the character of surety or bail becomes requisite at every step. Without these constant acts of mutual kindness and assistance, the course of business and commerce would be prodigiously impeded and disturbed. It becomes, then, excessively important to have the rule established that a surety is never to be implicated beyond his engagement.

Believing, as we do, that the engagement of the surety in this case must be measured by the terms of the appointment under which the cashier was serving at the date of the bond, we are constrained to hold that the appellants cannot be made liable for defalcations of Seidensticker occurring after his first re-election.

II. The plaintiff's itemized statement of the account of moneys alleged to have been converted by Seidensticker begins under date of April 24, 1894, and continues from day to day, or, at least, at very frequent intervals, until the close of his service as cashier in the year 1897. Indeed, there seems to have been little or no concealment of the fact that he was using moneys drawn from the bank, the items being from time to time charged to him on the books of the bank, and the account credited with occasional payments or deposits, and by notes given in settlement of his overdrafts. Under the rule which we have approved in the preceding paragraph of this opinion, the surety upon the bond in suit was not chargeable with liability for any of the alleged wrongful conversions or overdrafts of the cashier after his first re-election, on or about June 1, 1894. During this period of about five weeks the items charged against the cashier aggregate a comparatively small sum. On the other hand, during the time the account set up by the plaintiff was accumulating, Seidensticker became entitled to be and is credited in said itemized statement with considerable sums of money for wages earned and for payments and deposits

2. ACCOUNT: application of payments.

made, which, if applied to the extinguishment of the claims against him according to priority of time in respect to the dates of their creation, much more than satisfy any demand which otherwise could be rightfully asserted upon the bond. That the payments and credits, in the absence of any agreement or direction for their application elsewhere, should be used for· the satisfaction of those items or claims which are earliest in point of time, see *Allen v. Brown,* 39 Iowa, 330, and the numerous authorities cited in volume 2, Am. and Eng. Ency. Law (2d Ed.) 462. Such application being made and the surety's liability being limited to the term or period for which the cashier was first elected, there is confessedly nothing upon which to base a recovery by the plaintiff.

This conclusion renders it unnecessary for us to enter upon a consideration of the many other interesting questions which have been argued by counsel.

For the reasons stated, the judgment of the district court is *reversed.*