**LUMBERMENS MUTUAL CASUALTY COMPANY, Appellant,**

v.

**STATE of Iowa, DEPARTMENT OF REVENUE AND FINANCE,**
**Appellee.**

No. 96–163.

Supreme Court of Iowa.

June 18, 1997.

Fred L. Morris and Joseph M. Barron of Peddicord, Wharton, Thune & Spencer, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Harry M. Griger, Special Assistant Attorney Gener-

al, and Lucille M. Hardy, Assistant Attorney General, for appellee.

Considered by HARRIS, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

NEUMAN, Justice.

Plaintiff Lumbermens Mutual Casualty Company appeals summary judgment for the Iowa Department of Revenue and Finance, claiming insurance proceeds paid out on an embezzlement claim should be reimbursed from taxes collected on the stolen funds. The district court reasoned the insurer's subrogation rights under the parties' contract extended only to insured risks, not tax assessments. Finding no error in the court's analysis, we affirm.

The facts are undisputed. From 1989 to 1992, revenue department employee Lisa Leslie embezzled $692,468. She was aided in the scheme by her husband, James, and two neighbors, Michael and Tina Gardner. The department carried coverage for loss due to public employee dishonesty under a fidelity bond with Lumbermens. So the insurer paid the department $592,468—the amount of the theft less a $100,000 deductible.

The department, meanwhile, wasted no time shifting from crime victim to tax collector. Because embezzled funds are treated as income for taxation purposes, *see James v. United States,* 366 U.S. 213, 218, 81 S.Ct. 1052, 1054–55, 6 L.Ed.2d 246, 252 (1961), the department issued estimated "jeopardy assessments" to the Leslies and Gardners pursuant to its taxing authority. *See* Iowa Code § 422.30 (1993) ("If the director believes that the assessment or collection of taxes will be jeopardized by delay, the director may immediately make an assessment of the estimated amount of tax due...."). These tax assessments obligated the Leslies in the sum of $177,538.81, and the Gardners in the sum of $140,085.62.

When the Leslies and Gardners failed to pay the taxes, the department filed liens, issued distress warrants to the sheriff for seizure of property, and obtained administrative search warrants to seize the embezzlers' personal and business assets. *See* Iowa Code §§ 422.26 (lien and distress warrant), 421.9(3) (administrative search warrant). Successful in its efforts, the department collected individual income taxes of approximately $113,000 from the Leslies and approximately $32,000 from the Gardners. Nothing remained for Lumbermens to attach, nor has the State recovered restitution ordered as part of the embezzlers' criminal sentences.

Lumbermens then brought this declaratory judgment action to establish its claimed right to reimbursement under the parties' insurance contract. Its petition sought recovery, either in accordance with the terms of the policy or on equitable principles, "for any amounts realized by the [department] through the sale of property seized" from the Leslies and Gardners. By way of defense, the department asserted that Lumbermens at no time indemnified it for tax losses stemming from the embezzlement, nor did the department's jeopardy assessments represent the recovery of embezzled funds.

Following discovery, the case reached the district court on cross motions for summary judgment. In ruling for the department, the court concluded that Lumbermens' policy gave the insurer no right of subrogation against funds collected for delinquent taxes. Nor, the court ruled, could the insurer prevail on a theory of unjust enrichment. This appeal by Lumbermens followed.

## I. Issues on Appeal.

Lumbermens seeks reversal on three alternative grounds. First, it contends the court erroneously rejected Lumbermens' claim to an equitable lien (with priority over the department's interests) against the taxes collected from the embezzlers. Second, Lumbermens insists that its liability under the fidelity bond should be computed by subtracting the recovered money from the amount embezzled to arrive at the "direct loss." Finally, it maintains that the department's collection efforts breached the insurance contract and constituted an unlawful confiscation of property without due process in violation of the Fourteenth Amendment to the United States Constitution.

## II. Scope of Review.

■ Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c). The parties point to no disputed facts, so resolution by way of summary judgment was proper here. *See Central Nat'l Ins. Co. v. Insurance Co. of N. Am.*, 522 N.W.2d 39, 41–42 (Iowa 1994). Our review is limited to the correction of errors at law. Iowa R.App.P. 4. To the extent constitutional issues are implicated, we consider the totality of the circumstances under a de novo review standard. *Soo Line R.R. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 688 (Iowa 1994).

## III. Discussion.

Underlying this appeal is the department's sweeping tax collection authority. It acted on this authority to seize all the embezzlers' attachable assets thereby depleting funds immediately available for reimbursement to the insurer. That Lumbermens would be entitled to reimbursement on any *restitution* made on the embezzled funds is not at issue. The question is whether money collected by the department for delinquent taxes is subject to Lumbermens' subrogation claim. The short answer is "no."

■ A. *Equitable Lien Theory.* Lumbermens' claim to an equitable lien rests on its theory that the department has been unjustly enriched by collecting twice on one insured loss—first, by recovering the proceeds payable under the policy, and, second, by seizing assets to satisfy delinquent taxes assessed on the embezzled funds. *See Tubbs v. United Cent. Bank*, 451 N.W.2d 177, 185 (Iowa 1990) (equitable lien a restitution concept "applied by courts of equity to avoid injustice and particularly to avoid unjust enrichment"). It correctly states that one of the purposes of subrogation is "to prevent unjust enrichment of one party at the expense of another." *Ludwig v. Farm Bureau Mut. Ins. Co.*, 393 N.W.2d 143, 146 (Iowa 1986).

The parties' insurance contract contains the following subrogation clause:

**Transfer of Your Rights of Recovery Against Others To Us:** You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after the loss to impair them.

In keeping with this provision, Lumbermens seeks to place itself "in the shoes" of the department. *See Bales v. Warren County*, 478 N.W.2d 398, 400 (Iowa 1991) (describing subrogation as placing "party subrogated in the shoes of the creditor"). The district court recognized, however, that the department "is both the employer that suffered the embezzlement and the body charged with collecting income taxes on the embezzled money." In other words, the department wears a second pair of shoes. It suffered two losses: a direct loss of embezzled funds, and a loss of tax revenue on income generated by the embezzlement. *See James*, 366 U.S. at 218, 81 S.Ct. at 1055, 6 L.Ed.2d at 252 ("unlawful, as well as lawful, gains are comprehended within the term 'gross income' ").

The fundamental flaw in Lumbermens' equitable lien theory is its failure to appreciate the distinction between these two losses. Lumbermens furnished coverage for the embezzlement loss, not the tax loss. The parties' contract limits Lumbermens to reimbursement for "any loss [the department] sustained *and* for which [Lumbermens] paid or settled." (Emphasis added.) Because neither loss sustained by the department has been fully compensated, there has been no unjust enrichment. Nor can Lumbermens prevail on its claim the department "profited from the embezzlement." The assignment of error is without merit.

■ B. *Computation of "direct loss."* Lumbermens theorizes that its liability for the loss sustained by the department should be reduced by sums recovered on the embezzlers' tax debts. It cites several cases to support this theory, not for their legal holdings, but for the straightforward principle that when calculating covered losses caused by embezzlement, recovered money should be subtracted to determine the insured loss.

*See First Am. State Bank v. Continental Ins. Co.*, 897 F.2d 319, 323 (8th Cir.1990) (bank officer required to transfer all nonexempt property, stock, and profit sharing account to reduce covered loss incurred by bank as result of his fraudulent loan); *Mechanicsville Trust & Savs. Bank v. Hawkeye–Security Ins. Co.*, 158 N.W.2d 89, 91 (Iowa 1968) (where bank executive embezzled $141,000, but returned $26,000, net insured loss covered under employer's fidelity bond totaled $115,000); *Ida County Savs. Bank v. Seidensticker*, 128 Iowa 54, 64, 102 N.W. 821, 825 (1905) (during period of coverage, money lawfully accumulating in embezzler cashier's bank account offset "comparatively small" wrongful conversion).

Although the principle Lumbermens relies on is sound, it has no bearing on the issue before us. No amounts have been recovered from the embezzlers to satisfy the department's "direct loss." As already explained above, the amounts recovered from the embezzlers reduced their delinquent tax debt. The direct loss from the embezzlement remains.

This court's analysis of the subrogation issues in *Ludwig* is instructive. There the insurer provided coverage for medical expenses, but not pain and suffering or disability. *Ludwig*, 393 N.W.2d at 145. Upon full settlement with a third-party tortfeasor, Ludwig resisted the insurer's subrogation claim, insisting she had not been "made whole." *Id.* at 147. On the insurer's appeal, we concluded it was entitled to the proportion of the settlement that *included* medical expenses, thus avoiding a windfall to the insured. We noted, however, that any losses remaining after reimbursement by the third party "should be borne by the insurer who has been paid to assume such losses," thus preventing a windfall to the insurer. *Id.*

Proportional allocation of the recovery in *Ludwig* was proper because the settlement encompassed damages covered by insurance. Here, not only has the department received only partial payment on the delinquent tax debts, no restitution has been made on the direct loss from embezzlement. Accordingly, Lumbermens cannot prevail on its claimed right to have its liability on the covered direct loss reduced by amounts collected on the noncovered tax debt.

■ **C.** *Breach of contract and unconstitutional taking.* Lumbermens also asserts that by seizing the embezzlers' assets in satisfaction of delinquent tax debts, the department has impaired Lumbermens' ability to recover the direct loss. The department's action, Lumbermens argues, constitutes not only a breach of its contractual obligation but an unlawful confiscation of property without due process.

Lumbermens' constitutional claim merits only brief comment. The only authority cited in support of an alleged unconstitutional taking is the *dissent* in *James.* There the dissenting justice—who had no quarrel with the rule requiring taxation of income derived from both legal and illegal sources—nevertheless saw a potential for confiscatory "double taxation" because the victim had already paid taxes on the embezzled funds and the government sought to tax them again in the hands of the embezzler, to the direct loss of the party to whom the funds should be restored. *James*, 366 U.S. at 226–28, 81 S.Ct. at 1059–60, 6 L.Ed.2d at 258–59 (Black, J., dissenting). Such concerns—even if controlling—would carry little, if any, weight in the novel situation before us. Here the victim of the embezzlement *is* the taxing authority.

■ As for Lumbermens' breach-of-contract claim, we are convinced it depends on too broad a reading of the subrogation clause. The phrase "all your rights of recovery," when read in the context of the policy as a whole, means all of the department's rights as an employer insured against losses stemming from dishonest employees. The term "[a]ny loss" is clarified by the clause that follows: "for which we have paid or settled." This limits "any loss" to those losses covered under the policy.

■ The final sentence in the subrogation clause obligates the department to "do nothing after loss to impair" Lumbermens' rights of recovery. Lumbermens argues that impairment is demonstrated here by the department's depletion of the embezzlers' assets for the payment of taxes. Lumbermens, however, misperceives its rights under the

**436**

policy as well as the department's statutory obligations. Under the policy, Lumbermens has the right to *seek* recovery, not a right to recover. By statute, the department has a duty to pursue tax debtors with vigor. *See* Iowa Code § 422.26.

Lumbermens remains free to seek civil judgments against the embezzlers, or to pursue its subrogation rights in the event restitution or recovery is made on the direct loss. *See Bales,* 478 N.W.2d at 401. It must be remembered, however, that the department enjoys a preferred tax collection authority. *See* Iowa Code § 422.26 (no property of taxpayer exempt from judgment for unpaid taxes). Lumbermens, as the department's insurer, enjoys no enhancement of its subrogation rights merely by virtue of its insured's taxing power.

We have considered all the issues raised by Lumbermens on appeal and conclude they were correctly resolved by the district court in the department's favor. Accordingly, we affirm the judgment of the district court.

**AFFIRMED.**