STATE OF MISSOURI to the use etc., Respondents, v. JOHN P. O'NEILL et al., Appellants.

Kansas City Court of Appeals, November 6, 1905.

1. **OFFICES AND OFFICERS: Sheriff's Bond: Attachment: Conversion: Limitation.** Where a sheriff sells attached goods under order of the court and is sued by an adverse claimant in conversion, while different in form, the latter suit is equivalent in effect to an interplea, and the issue is in reality between the plaintiff in attachment and the plaintiff in conversion as to the ownership of the goods or their money value; and the plaintiff in the attachment can not demand the money of the sheriff until the suit in conversion is finally settled, and limitation then first begins to run.

2. ——: ——: ——: ——: ——. The fact that the plaintiff in conversion on appeal fails to give an appeal bond can not alter the rights of the parties.

3. ——: ——: ——: ——: ——: **Statute.** Under section 393, Revised Statutes 1899, action does not accrue against a sheriff for failure to turn over the money secured in attachment until ordered by the court to turn the same over, since he holds the money for the court and must obey its mandate, and limitation does not begin to run until such order.

4. ——: ——: ——: **Creditors: Registry.** Plaintiffs in attachment who have not settled with the sheriff are negligent in permitting him to go out of office without an order requiring him to pay the fund into the registry of the court; but the termination of his office does not require him to do this without an order, and his failure in this respect is no breach of his bond.

5. ——: ——: **Successive Sureties: Presumption.** When the sheriff's term expires and he gives a new bond, the presumption is that he had done his duties during his former term, and any subsequently discovered default is presumed to have been under the second bond, and such presumption must be overcome to recover on the first bond.

6. ——: ——: ——: **Time of Default.** However, the time of actual default and not the technical breach imposes the obligation which ripens into a cause of action upon the officer's refusal when legally called to account.

7. ———: ———: ———: ———: **Evidence.** Evidence reviewed and held to show the actual default occurred under a former bond.

8. ———: ———: **Practice: Burden of Proof.** When the burden of proof is upon the plaintiff to show when a default occurred, if the defendant assumes to show when it occurred, he should show the whole truth within his knowledge and his failure to do so justifies the inference that it arises from a knowledge of its hostility to his defense, which inference is legitimate, since the ultimate fact is not required to be proved by direct and positive evidence.

Appeal from Jackson Circuit Court.—*Hon. Shannon C. Douglass,* Judge.

AFFIRMED.

*Edward C. Wright* and *Holmes & Page* for appellants.

(1) Respondents' cause of action was barred by the statute of limitations. R. S. 1899, sec. 4274; Mitchell v. Fullbright, 32 Mo. 551; Shaeffer v. Bernero, 11 Mo. App. 562; State ex rel. v. Lidwell, 11 Mo. App. 567; State ex rel. v. Minor, 44 Mo. 373, 376. (2) The Augusta Mayer suit could not stop the statute of limitations from running against respondents' claim, and the court erred in admitting any evidence in relation to that suit. Sutton v. Dameron, 100 Mo. 141; Tiffin v. Leabo, 52 Mo. 49; Henry v. Woods, 77 Mo. 277; Field v. Stubblefield, 85 Mo. 199; Updegrove v. Blum, 117 Pa. St. 259; Peterson v. Railroad, 190 Pa. St. 364; Wood v. Dill, 3 Kan. App. 484; Garrett v. Pierson, 29 Iowa 304; Gaines v. Hammond, 6 Fed. Rep. 529; Elder v. McClaskey, 70 Fed. Rep. 529; Seibert Co. v. William Co., 38 Fed. Rep. 600. (3) The plaintiff in this cause was not entitled to recover, regardless of limitations, because, (a) the statutes forbid. R. S. 1899, sec. 10035. (b) On the undisputed facts, the second bond only was liable. State ex rel. v. Minor, 44 Mo. 373; Draffen v.

City, 8 Mo. 395; State ex rel. v. Smith, 26 Mo. 226; State ex rel. v. McCormick, 50 Mo. 568; State ex rel. v. Finn, 98 Mo. 532; State ex rel. v. Branch, 134 Mo. 592; State ex rel. v. Paul, 21 Mo. 51; Shaeffer v. Bernero, 11 Mo. App. 562; State ex rel. v. Lidwell, 11 Mo. App. 567; State ex rel. v. Finn, 23 Mo. App. 567; Bruce v. U. S., 17 How. 437; Miller v. Stewart, 9 Wheat. 681; Riddell v. School Dist., 15 Kan. 168; Leigh v. Evans, 64 Ark. 26; Doolittle v. Railroad, 20 Kan. 337; Commissioners v. McCormick, 4 Mont. 115. (4) The admissions of respondent in the pleadings in the suits against O'Neill's second bond were admissible, and, when uncontradicted, conclusive against plaintiff's recovery. Douzelot v. Rawlings, 58 Mo. 75; Fry v. Estes, 52 Mo. App. 1; Snyder v. Railroad, 112 Mo. 527; Nichols v. Jones, 32 Mo. App. 657.

*Wollman & Solomon* for respondents.

(1) The statute of limitations does not begin to run against the sheriff's bond until the rights to the proceeds in his hands shall have been determined. State ex rel. Finn, 23 Mo. App. 290; State ex rel. v. Hickman, 150 Mo. 626; Soulard v. St. Louis, 40 Mo. 145; Rickards & Co. v. Beamis & Co., 78 S. W. 241; Daugherty v. Moon, 59 Texas 399; McMahan v. Hall, 36 Texas 59; Platt v. Phillips, 37 Texas 9; Bank v. Finn, 98 Mo. 532, l. c. 540; Dany v. Field, 1 Abb. Dec. 490; Peck v. Hotchkiss, 52 How. Pr. 226. (2) Appellants also contend that on the undisputed facts, the second bond only was liable. (3) It is also contended by appellants that respondents have elected to hold O'Neill personally, and cannot maintain this action. Oberbeck v. Mayer, 59 Mo. App. 289; Crawford v. Word, 7 Ga. 445; Taylor v. Johnson, 17 Ga. 521; Graham v. Court, 39 Ky. (9 Dana) 182; Mullen v. Scott, 9 La. Ann. 173; Lowell v. Parker, 57 Mass. (10 Metc.) 309); 43 Am. Dec. 436; Tracy v. Goodwin, 87 Mass. (5 Allen) 409; Hursey v. Marty, 61 Minn. 430, 63 N. W. 1090; State v. Jennings, 14 Ohio St. 73.

JOHNSON, J.—On January 26, 1894, the plaintiff, Blacker, Gerstle & Company, brought an attachment suit in the circuit court of Jackson county against Charles Johns. The writ was issued and placed in the hands of the defendant O'Neill, who was then sheriff, and certain goods were seized thereunder as the property of Johns. On February 14th, following, the goods were sold by the sheriff pursuant to an order of court and $1,149.46 were realized from the sale. These proceeds have ever since remained with O'Neill, and at some time, just when is not shown, were converted by him to his own use. He made due report of the sale at the April, 1894, term of court. On April 13, 1894, plaintiffs recovered judgment by default against Johns in the sum of $989.25. The attachment also was sustained and no appeal was taken from this judgment.

On March 6, 1894, an action was begun in the circuit court of Jackson county by Augusta Mayer against O'Neill and his bondsmen upon his official bond to recover damages on account of the alleged conversion of the property attached. Plaintiff in that suit claimed title to the goods attached under a chattel mortgage executed by Johns to secure a debt of $4,270 and interest. The lien of this mortgage was asserted to be prior and superior to the attachment lien. Issues were joined and a trial was had in February, 1896, resulting in the taking by plaintiff of a compulsory nonsuit. An appeal was prosecuted by her to the Supreme Court and the judgment was affirmed. The mandate of affirmance was filed in the circuit court on July 14, 1899. At the January, 1901, term of the circuit court plaintiff filed a motion for an order upon O'Neill to pay into court the proceeds of the attached property. The motion was sustained March 30, 1901, and the order was made and service thereon acknowledged by O'Neill, but the proceeds were not paid into court as directed.

The suit before us was brought by plaintiff in the

circuit court of Jackson county on August 7, 1901, against O'Neill and his bondsmen upon his official bond in force at the time of the sale of the attached property. The object of the suit, as disclosed by the averments in the petition, is to recover judgment for the funds converted to the extent of plaintiffs' interest therein. The defenses interposed in the answer are, first, a general denial, second, a plea of limitation, and third, the pendency of another suit brought by plaintiffs against O'Neill and his sureties upon another and later official bond. The reply filed put in issue the affirmative defenses and in addition pleaded the proceedings in the Mayer suit to prevent the running of limitations. Plaintiffs recovered judgment and defendants appealed.

In addition to those recited, the following facts appear from the evidence: O'Neill was elected sheriff at the November, 1892, election and filed his bond (the one in suit) November 28, 1892. He was inducted in office January first, following. All of the official acts performed by him in relation to plaintiffs' attachment suit occurred during this term of office. At the November, 1894, election (November 6th) he was re-elected sheriff for another term and on December 29th, following, filed a new bond with other sureties than those upon the one in suit. After serving through the second term he retired from office. No order of court touching the disposition of the proceeds of the attached property was applied for or made during his incumbency nor thereafter, except the one mentioned. He was not called upon to account for the fund until after the determination of the Mayer suit in the Supreme Court, although no appeal bond was filed in that action. It was shown by defendants that during the year 1894 O'Neill, as sheriff, kept an account with a bank in Kansas City and had on December 1, 1894, $7,866.65 to his credit, and on December 31, $3,062.13, but it is not shown, although O'Neill himself was called as a witness, that the fund in question was incorporated in that deposit nor that any part

of the deposit was applicable to its liquidation, had he then been called upon to account for it. Defendants also introduced in evidence a petition filed in the circuit court of Jackson county on July 18, 1901, in an action brought by plaintiff against O'Neill and his sureties upon his second bond, wherein the cause of action pleaded is the same as that in the present suit.

One of the contested issues relates to the effect of an interplea filed by another creditor of Johns in plaintiffs' attachment suit but under the views entertained by us it is not necessary to the proper determination of this controversy to go into that issue.

There is no conflict in the evidence. There are some differences between the parties relative to the inferences to be drawn therefrom, which will be noted during the progress of the ensuing discussion. The case was tried by the court, a jury being waived. No declarations of law were asked by either party, and a reversal of the judgment is sought on the ground that the uncontradicted facts preclude a recovery by plaintiffs.

Defendants urge that under Revised Statutes 1899, section 4274, the cause is barred by limitations as more than three years elapsed from the date of the recovery of judgment in the attachment suit (April 13, 1894) to that of the bringing of this action (August 7, 1901), while plaintiffs say that the pendency of the Mayer suit tolled the statute so that its operation did not begin before the filing of the mandate (July 14, 1899). In answer to this, defendants argue, first, that the Mayer suit asserted no claim upon the fund in the sheriff's custody and therefore did not involve the thing pursued by plaintiffs from which premise it must logically follow that plaintiffs when they recovered judgment had the right to demand and receive from the sheriff, out of the fund in his hands, an amount sufficient to satisfy their claim, regardless of the fact that this fund arose from the same property to which Mayer was asserting paramount title in her suit against the sheriff and his sureties; and, sec-

ond, that as Mayer did not give an appeal bond, the statute at all events began to run on the date of the judgment against her in the circuit court (February 19, 1896).

Regarding the first of these contentions, it must be conceded that Mayer in her suit was not attempting to reach the proceeds of the attached property, but was endeavoring to recover damages for the conversion alleged. Had she succeeded, the basis of her recovery would have been the actual market value of the goods at the time of their caption under the attachment writ without reference to what they brought at sheriff's sale under the attachment. But her cause of action was in fact bottomed upon the same thing as that of plaintiffs in their attachment suit. Both were claiming the superior title to the same goods and both were in different ways reaching after the same thing—their money value. Had Mayer been satisfied that the amount derived from the sale represented the real value of the property, she could and probably would have interpleaded in plaintiffs' suit. What she did was, so far as the sheriff's duties were concerned, the legal equivalent to such proceeding. In either case it became his duty to hold the proceeds in his hands, subject to the order of the court, and the court would not have been warranted in ordering the payment of plaintiffs' judgment in the face of an adverse claim to the property in whatever form of action asserted. To say otherwise would be to hold that the officer, compelled by law to levy the writ, may be forced to relinquish his safest security with the likelihood before him of having to pay to a rival claimant that for which it stands—the value of the property in controversy between the claimants. We are not saying that the officer should not be required to pay the money into the registry of the court pending the litigation, but that the fund should remain in the custody of the law, until the attachment plaintiff has cleared the field of those who are pressing adverse claim in court to the property attached. It follows that

as the plaintiffs could not have legally demanded the satisfaction of their judgment out of the fund pending the Mayer suit, the sheriff was not in default as to them during that period of time and limitations could not begin to run against them before its expiration.

As to the second point, no good reason has been presented for holding that the failure of Mayer to give an appeal bond started the running of the statute. It is true, the failure to give the statutory bond left the judgment unsuperseded, but it did not absolve the sheriff from liability; and had Mayer prevailed in the Supreme Court and on retrial recovered judgment, the sheriff or his sureties would have been compelled on execution to satisfy such judgment. For the reasons heretofore given he should not be deprived of his security until freed from liability involved in pending suits against him.

Under Revised Statutes 1899, section 393, which provides that "the proceeds of such sale shall be paid into court or otherwise disposed of as the court or judge may order," we are of the opinion that it required the disobedience by the sheriff of an order of court or of the judge thereof to put him in default as to plaintiffs. The sheriff is an executive officer and may not, except at his peril, constitute himself a judge to decide when and to whom he will pay the proceeds of attached property. He must hold the money for the court and obey its mandate, and in doing this fills the measure of his duty. O'Neill's liability upon his bond did not mature until he failed to comply with an order of the court, and the statute did not begin to run against plaintiffs' cause of action before then.

Plaintiffs certainly were unmindful of their interests in permitting O'Neill to go out of office (which occurred pending the Mayer litigation) without applying for an order requiring him to pay the fund into court, but the termination of his office did not *ipso facto* require him to do this in the absence of an order and,

therefore, his failure to do it did not constitute a breach of his bond.

Passing now to the questions raised relating to the effect of the approval of O'Neill's second bond, it is contended by defendants we must start out with the presumption that when the sheriff entered his second term, after giving a new bond, he had committed no wrong touching the fund in his custody; that the misappropriation thereof occurred during or after his second term for which his second bond alone would be liable; and that the burden is upon plaintiffs to overcome this presumption with proof showing that the conversion in fact was made during the first term. In State v. McCormack, 50 Mo. 568, it is said: "No principle of law is better established than that where an officer proves a defaulter and has held the office under different appointments, with several sets of sureties, the sureties will be responsible who were on the bond at the time the defalcation occurred;" and in Smith v. Paul, 21 Mo. 51, the court, speaking through Judge SCOTT, placed the burden of proof upon the plaintiff upon the reason appearing in the following excerpt from the opinion: "From the face of the papers the surety in the last bond is chargeable with the money sought to be recovered in this suit. Now as the plaintiff has waived her action on the last bond and the settlement under it, there is no hardship in imposing on her the burden of proof that would have exculpated the surety on that bond. She must show that her money was wasted by her curator whilst Paul was the security. As the law will not presume a default or wrong in the curator, nothing more appearing, the presumption is, that the money was in his hands at the time the last bond was entered into and, consequently, that Paul the surety in the first bond was discharged."

In following the class of cases to which the two just noted belong, we bear in mind the well-settled principle that it is the time of the actual defalcation and not that of the technical breach that imposes an obligation under

the bond. The test question is, when was the actual wrong committed? That is to say, when did O'Neill convert the money to his own use? If he did it during his first term of office, defendants must be held to make good the defalcation, for their obligation arose by his wrong and ripened into a cause of action in favor of plaintiffs by his refusal when legally called upon to account for his stewardship. Such obligation could not, by the act of the officer in giving a new bond, be shifted from their shoulders. [State ex rel. v. Branch, 126 Mo. 448.]

It thus appears that a single issue of fact controls the determination of the question of defendants' liability, and that is, did the defalcation occur during O'Neill's first term? As no declarations of law were asked we must assume, if we find substantial evidence supporting it, that the court resolved this issue of fact in favor of plaintiffs' contention. Is there any substantial evidence in the record upon which such finding may reasonably be based? The fact of the defalcation was admitted by O'Neill on the witness stand but he was not asked when it occurred. Defendants themselves undertook to show by evidence that it did not occur during his first term and to that end proved that at the close of that term he had in bank some $3,000 to his credit as sheriff. The amount of the fund belonging to this case was $1,-149. O'Neill also had in bank another fund amounting to about $900 belonging to the case of Lindsay v. Johns, another attachment suit of similar history to the one before us. He also defaulted in that case. When he began his second term he should have had intact these two sums amounting in all to more than $2,000. No attempt was made by defendants to show that the deposit in bank covered all of his liabilities incurred *ex officio* although the means were at their command to prove this had it been a fact. The sheriff of a county containing a large and important city becomes the custodian of many funds and in showing such meager assets available for the satisfaction of all such demands, is it not fairly in-

ferable to say that they were inadequate to meet the sheriff's official obligations and therefore did not include the fund in question?

It may be argued that defendants were not required to show possession by the sheriff of more than enough assets to meet this particular demand, and in answer to this we will say defendants were not required to go into the subject at all until plaintiffs discharged the burden of proof upon them; but when a defendant charged with wrongdoing undertakes before any burden of proof devolves upon him to exculpate himself, he must not complain if the triers of fact judge him as well by what he leaves unsaid as by the facts he chooses to bring out. Defendants sought to advantage themselves in the eyes of the court by the production of a half truth when they might have escaped entirely by leaving the burden of proof where it belonged. It is but fair to assume that they could and would have shown the whole truth but for the knowledge of its hostility to their defense. The ultimate fact in issue is not required to be proven by direct and positive evidence but may be found as a reasonable inference from other facts and circumstances. That defendants in their zeal to make the best possible showing voluntarily chose to speak and then withheld the most important fact within their knowledge, the disclosure of which had it been favorable to their defense would certainly have relieved them from liability is a circumstance which in connection with the other facts in evidence supports the conclusion that the defalcation occurred during O'Neill's first term of office.

Finally, as to the suit brought by plaintiffs on the second bond; it is not contended that it operates as a bar to the prosecution of the present action, but the position is taken that it must be treated as an admission against interest. Granting this to be true, it was a matter to be considered by the triers of fact in weighing the evidence and is settled so far as the present inquiry is concerned

by the finding of fact upon which we assume the judgment was based.

Other points made are fully answered in the views expressed. The judgment is affirmed. All concur.