MERCER, APPELLANT, v. DYER, COUNTY TREASURER, RESPONDENT.

[Submitted February 11, 1895.    Decided February 18, 1895.]

NATIONAL BANK—*Insolvency—Equitable setoff.*—Section 5242 of the Revised Statutes of the United States, which requires the assets of an insolvent national bank to be ratably distributed among the creditors, and forbidding any preferences to be given or suffered, does not interfere with the equitable right of a debtor of the bank to set off against his indebtedness the amount of a claim he holds against the bank, and whether or not his indebtedness to the bank has actually matured at the time of the bank's insolvency is immaterial.

*Appeal from Sixth Judicial District, Park County.*

APPLICATION for a writ of *mandamus* to compel the payment by the defendant of a certain county warrant. Judgment was rendered for the defendant by HENRY, J. Affirmed.

Statement of the case by the justice delivering the opinion:
The appellant, who is the receiver of the Livingston National Bank, an insolvent corporation, applied to the district court for a writ of mandamus to require the defendant, who is treasurer of Park county, to pay a certain county warrant owned and held by said bank at the time it became insolvent and was placed in the hands of the receiver. The bank suspended and became insolvent on the seventh day of July, 1893. Upon the filing of appellant's petition the court issued an alternative writ to the defendant to show cause why a peremptory writ should not issue. On return of the order to show cause the defendant filed his answer, setting forth, in substance, that prior to said seventh day of July, 1893, on which day the said bank became insolvent, he had as such treasurer deposited in said bank the funds of said county, amounting in the aggregate to the sum of seven thousand five hundred dollars and thirty-eight cents. That prior to said day said bank had, at the request of defendant, paid fifteen hundred and seventy-five dollars for interest coupons taken from the bonds of said county. That, at the time appellant was appointed receiver of said bank, said sum had not been charged to the account of defendant; that, after appellant had been appointed receiver of said bank, he charged the amount

paid for said coupons to the defendant and deducted the same with commission from his account, leaving as a balance due the defendant the sum of five thousand nine hundred and twenty-one dollars and forty-six cents; that said sum paid for said coupons was claimed and allowed as an offset against the amount due the county; that he did not know that the bank was the owner of the county warrant in suit until it was presented for payment by appellant; that on the twenty-ninth day of November, 1893, in accordance with the statutes of the state in such cases, he called for certain warrants for payment, among which was the warrant in controversy; that the same was presented by the appellant for payment as the property of said bank; that thereupon defendant refused to pay the same, claiming an offset by reason of the funds of said county deposited in said bank, but agreed to allow the applicant to offset said warrant against said deposit, which offer the appellant refused. Upon the showing by defendant the court denied appellant's prayer for a peremptory writ of mandamus, and entered judgment for the defendant for costs.

From this judgment this appeal is prosecuted.

*E. C. Day*, for Appellant.

In the case at bar the setoff claimed does not come within the definition of a legal setoff or counterclaim (Code Civ. Proc., § 90), since it is not a cause of action arising out of or connected with the transaction set forth in the complaint. The cause of action set forth is a promise by the county of Park to pay the bank. The setoff claimed is on a promise by the bank to pay H. W. Dyer. It may be claimed that the deposit having been made in the name of "H. W. Dyer, County Treasurer," indicated to the bank that the funds belonged to the county. However that may be, the evidence shows that these funds were subject to the check of H. W. Dyer, without reference to the county's needs or orders, and that the funds were there for Dyer's convenience alone. While perhaps the county might, under certain circumstances, sue for these funds, it has not done so in this instance, and this defense is made purely for the personal benefit of the treasurer and his bondsmen without any order from the county. The

county could not and has not recognized this disposition of its funds. (*County* v. *McCormick*, 4 Mont. 115.) A debt due to an officer in his private capacity is not a proper setoff to a claim against him for money received by him in his official capacity. (*Prewett* v. *Marsh*, 1 Stew. & P. 17; *Harper* v. *Howard*, 3 Ala. 254; *Commonwealth* v. *Rhodes*, T. B. Mon. 318; *Commrs* v. *Pierce*, 72 N. C. 181; *United States* v. *Prentice*, 6 McLean, 65.) Again, this is an action against a receiver of a national bank, and the rights of the parties become fixed as of the date of its insolvency, and this setoff could not be allowed at law because the plaintiff's demand was not then due, the warrant not then having been called. (*Scott* v. *Armstrong*, 146 U. S. 499.) Nor can the claim in controversy be the subject of an equitable setoff. There are here no mutual debts or credits, such as form the basis of the jurisdiction of equity. (Story's Equity Jurisprudence, § 1435; and see *Munger* v. *Albany Nat. Bank*, 85 N. Y. 590; *Town of Wallingford* v. *Hall*, 45 Conn. 350.) Neither are the transactions such as to raise the presumption of an agreement for setoff, and the fact that the bank is insolvent is not alone sufficient as a basis for equitable jurisdiction. (See *Scott* v. *Armstrong, supra; Blount* v. *Windley*, 95 U. S. 173.) But, assuming that the insolvency of the bank is sufficient to invoke the equitable jurisdiction, " where the equities are equal, the law prevails," and a court of equity will not permit a setoff in such cases, if it is not allowable at law.

*Campbell & Stark*, for Respondent.

The money in the bank, being deposited in the name of the respondent, as county treasurer, was notice to the officers and the receiver of the insolvent bank that the same was county funds; and the county would have the right to claim the fund and recover the same from such receiver, as against the respondent in this action. (*Wolffe* v. *State*, 79 Ala. 201; 58 Am. Rep. 590; *Taylor County* v. *Standley*, 79 Iowa, 666; *Burtnett* v. *Bank of Corunna*, 38 Mich. 630; *Penk* v. *Ellicott*, 30 Kans. 156.) If the county could claim the fund the officer who is the trustee for the fund could certainly claim it for the benefit of the county, when action is brought against him to compel

him to pay moneys belonging to the county, over which he is trustee. The insolvency of the bank gives the respondent an equitable setoff. (See *Yardley* v. *Clothier*, 49 Fed. Rep. 337; 51 Fed. Rep. 506.) " Natural justice would seem to require that when the transaction is such as to raise the presumption of an agreement for a setoff it should be held that the equity that this should be done is superior to any subsequent equity not arising out of a purchase for value without notice." (*Scott* v. *Armstrong, supra; Smith* v. *Felton*, 43 N. Y. 419.)

PEMBERTON, C. J.—The court below evidently held that the defendant under the pleadings and evidence was entitled in equity to offset the appellant's demand against the bank's indebtedness to the county. The appellant contends that such holding is error. He insists that by allowing the offset an unauthorized preference was given to the defendant, which he claims is prohibited by section 5242 of the National Bank Law. This section is as follows:

"SEC. 5242. All transfers of the notes, bonds, bills of exchange or other evidences of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void; and no attachment, injunction or execution, shall be issued against such association or its property before final judgment in any suit, action or proceeding, in any state, county, or municipal court."

In *Scott* v. *Armstrong*, 146 U. S. 499, Mr. Chief Justice Fuller, construing this statute in a case similar to the one under consideration, says: "The argument is that these sections by implication forbid this setoff, because they require that, after the redemption of the circulating notes has been fully provided for, the assets

shall be ratably distributed among the creditors, and that no preferences given or suffered, in contemplation of or after committing the act of insolvency, shall stand. And it is insisted that the assets of the bank existing at the time of the act of insolvency include all its property without regard to any existing liens thereon or setoffs thereto. We do not regard this position as tenable. Undoubtedly, any disposition by a national bank, being insolvent or in contemplation of insolvency, of its choses in action, securities or other assets, made to prevent their application to the payment of its circulating notes, or to prefer one creditor to another, is forbidden; but liens, equities or rights arising by express agreement, or implied from the nature of the dealings between the parties, or by operation of law, prior to insolvency and not in contemplation thereof, are not invalidated. The provisions of the act are not directed against all liens, securities, pledges or equities, whereby one creditor may obtain a greater payment than another, but against those given or arising after or in contemplation of insolvency. Where a setoff is otherwise valid it is not perceived how its allowance can be considered a preference, and it is clear that it is only the balance, if any, after the setoff is deducted which can justly be held to form part of the assets of the insolvent. The requirement as to ratable dividends is to make them from what belongs to the bank, and that which at the time of the insolvency belongs of right to the debtor does not belong to the bank."

While the case just cited was pending in the circuit court of appeals for the sixth circuit the court certified to the supreme court for instructions as to the proper decision thereof, among others, this question: "1. Where a national bank becomes insolvent and its assets pass into the hands of a receiver appointed by the comptroller of the currency, can a debtor of the bank set off against his indebtedness the amount of a claim he holds against the bank, supposing the debt due from the bank to have been payable at the time of its suspension, but that due to it to have been payable at a time subsequent thereto"? The supreme court answered this question in the affirmative.

In *Yardley* v. *Clothier*, 49 Fed. Rep. 337; 51 Fed. Rep. 506,

the court holds that: "A depositor in an insolvent bank, who had indorsed a note that was subsequently discounted by said bank, can, in a suit by the bank to recover the amount of the note, set off his deposit against this amount, when the note matured after the insolvency of the bank."

In this case the court further says: "The doctrine of setoff is founded on the principles of equity, and, within certain limits, is universally recognized and applied. Where parties dealing together become mutually indebted, the balance appearing on their accounts is, generally, alone recoverable. Well defined and easy of comprehension as the doctrine is, however, its application to the varying state of facts which arise is attended with the same degree of difficulty that attends the administration of other plain legal principles, under unusual circumstances. In the distribution of insolvents' assets, whether under voluntary trusts for creditors, insolvent laws, in bankruptcy, or proceedings on decedents' estates, its application has frequently been resisted on the ground that its allowance would create preference among creditors. To enter upon an examination of the questions raised and the distinctions drawn would be unprofitable. It is sufficient to say that in every instance in which this objection has been made (in the absence of controlling statutory provision) where the proposed setoff was due when the creditors' rights attached, the courts have overruled it, whether the defendant's debt, in suit, was due at the time or matured subsequently."

In *Van Wagoner* v. *Paterson G. L. Co.*, 23 N. J. L. 283, the court, discussing the doctrine of equitable setoff, say: "I am of opinion, both upon principle and authority, that the debtor of an insolvent corporation loses none of his rights by the act of insolvency; that he has the same equitable right of setoff against the receiver that he had against the corporation at the time of insolvency, and, consequently, that the debtor of a bank, whether his indebtedness has actually accrued or not at the time of insolvency, may in equity set off against his debt either a deposit in the bank or the bills of the bank *bona fide* received by him before the failure occurred. It is said the object of the act is to do equal justice to the creditors, and that equality is equity. But equality of what, and among whom?

Clearly of the assets of the bank, among the creditors of the bank. In cases of cross-indebtedness the assets of the bank consist only of the balance of the accounts; that is, all the fund which the bank itself would have to satisfy its creditors in case no receiver had been appointed. And there is no equality, and no equity, in putting a debtor of the bank, who has a just and legal setoff against the corporation, in a worse position and the creditors in a better position by the bank's failure and the appointment of a receiver." *Yardley* v. *Clothier, supra,* is cited as authority in *Scott* v. *Armstrong, supra,* and is evidently in harmony therewith.

In view of these authorities we are unable to see how the defendant could be placed in a worse position and the creditors in a better one by the bank's insolvency and the appointment of a receiver. If the bank had not failed and was now prosecuting this suit it would be hardly claimed that the defendant could not offset this claim. The appellant claims that the warrant in suit was not due at the time the bank became insolvent, because it had not been called for payment. Under the authorities cited we think this contention of little importance. But we are not satisfied that it is true that the warrant was not then due. The warrant is dated May 31, 1893, and there is no time specified when it is payable. It is indorsed "Presented and registered June 10, 1893. Not paid for want of funds." But did the fact that the treasurer had no funds to pay it with at the date of its issue or presentation prevent its maturing until called for payment after funds had accrued to pay it with?

The evidence in the case shows that the officers of the bank knew this deposit was county money, placed in the bank for the sole purpose of paying the indebtedness of the county by the defendant as treasurer. And the circumstances of the case are such that the bank understood that, when the treasurer should seek to settle this account with it, either would have the right to claim credit for any cross-indebtedness that might exist. We think the facts and circumstances of this case are sufficient to establish the right to the equitable setoff claimed by defendant.

In this holding we do not intend to be understood as in any

manner intimating that by the action of the county commissioners, as shown by the evidence, in treating this deposit by the treasurer as cash on hand, the defendant would be in any way relieved from liability as treasurer of said county, if loss should result by the insolvency of the bank.

The judgment of the court is affirmed.

*Affirmed.*

DE WITT, J., and HUNT, J., concur.

[Submitted February 11, 1895.—Decided February 18, 1895.]