AMERICAN INDEMNITY COMPANY *v.* REED.

4-4013

Opinion delivered October 28, 1935.

*House, Moses & Holmes* and *W. R. Roddy,* for appellant.

*Joe D. Shepherd* and *Raymond Jones,* for appellees.

BAKER, J. Gordon Walker contracted for the construction of a courthouse at Russellville, Arkansas. He was required to execute contractor's bond, and this bond was made by the Union Indemnity Company, a corporation, as paid surety.

The Union Indemnity Company had, sometime previously, been authorized to do business in the State of Arkansas. The record is silent on the matter of the surety for the Union Indemnity Company, at the time it was authorized to do business in the State, and also at the time it became surety upon the bond for Gordon Walker. However, on July 28, 1931, the American Indemnity Company executed and filed what is called a qualifying or sustaining bond for the Union Indemnity Company.

Thereafter, on the 14th day of March, 1932, the Union Indemnity Company executed a new sustaining bond, and filed it with the Insurance Commissioner. This new bond of the Union Indemnity Company had, as its surety, the Independent Indemnity Company. This last mentioned company is sometimes referred to in part of the record as the "Independence Indemnity Company." We are not sure as to the correct name of this company, but since it is mentioned more frequently in the abstract and brief as the Independent Indemnity Company, we will so refer to it in our discussion.

Burl Reed, Leon L. Reed, Willie P. Reed and Huey Reed were laborers who worked for a time upon the courthouse under employment by Walker, some of them beginning their labor in November, and the others in December of 1931, and all of them continuing until April 15, 1932.

A copy of the bond, upon which the American Indemnity Company became a surety need not be set forth herein, as the pertinent parts or effect thereof will be set forth in the opinion, but it is necessary to say that the bond bore this indorsement:

"Indorsement:

"Superseded by bond of Union Indemnity Co., with Independence Indemnity Co., as surety for $50,000, which is approved and filed March 14, 1932.

"A. D. DuLaney, Ins. Com.,
"By J. W. Hatley, Deputy."

Walker became insolvent. His surety upon his contractor's bond, Union Indemnity Company, became insolvent, and the plaintiffs, who had owing to them per-

haps something above $2,000 in the aggregate, being unable to collect their money upon judgments recovered against Walker and his surety, sued the American Indemnity Company, upon the qualifying or sustaining bond it had executed for the Union Indemnity Company, and all of the parties recovered judgment for the amounts sued for, and this appeal, by the American Indemnity Company, is from that judgment and decree, rendered by the chancery court of Pulaski County.

The appellees insisted that, inasmuch as the American Indemnity Company was a surety at the time they began to work upon the courthouse, the liability attached, or the effect of the guaranty was invoked and continued until they were paid. The appellant insists that when the new bond was executed with the Independent Indemnity Company, as surety, by operation of law, the new bond, upon its acceptance by the Insurance Commissioner, automatically released the appellant, or former surety, and that the new surety became bound for all obligations owing to plaintiffs that had accrued to that date.

The appellant also argues in the alternative that from and after the date of March 14, 1932, when the new bond was executed and substituted for the bond that had been signed by the appellant as surety, the appellant, being no longer a surety upon the bond, could not be bound for the payment of any debts or liabilities arising or accruing after the said date of March 14th.

The undisputed facts show that a larger part of the work was done before the new bond was executed by the Independent Indemnity Company. Without attempting to be mathematically accurate, as to the exact time or amounts covered by the respective bonds, as argued by the appellant, it may be said that about six-sevenths of the work had been done, or the amount sued for had been earned, when the new bond was filed, and that thereafter, as stated in the brief, 331 hours of their labor were performed. We are not attempting to check or verify the accuracy of these allegations. Upon the assumption that they are correct, our opinion may be stated with the same result.

Surety bonds, of the kind sued on here, are authorized to be made under § 6134 of Crawford & Moses' Digest, and the amendment thereto, as made by act No. 493 of the Acts of 1921. That part of said act to which our attention is invited is as follows:

"Any guaranty or surety company desiring to transact business in this State as herein provided shall execute a bond signed by any other guaranty or surety company authorized to transact business in this State, or by citizens of this State, for the benefit of its obligees, in the sum of $50,000, to be approved by the Insurance Commissioner and filed in his office; provided the guaranty or surety company making the deposit of securities herein named with the Insurance Commissioner of this State shall not be required to give the bond herein provided for."

It is further provided that the guaranty or surety company making a deposit of securities with the Insurance Commissioner shall not be required to execute the bond by another surety or guaranty company. The securities mentioned must be of the value of $50,000, and be deposited with the State Treasurer for the benefit of obligees.

We call attention to the fact that the provision for the aforementioned bond does not provide for any time limit or period for which such bonds should run, or during which the surety would be bound, nor is it provided in any way for the release of the sureties upon any account or for any reason whatever, except that if the Insurance Commissioner shall at any time determine that the security is inadequate, he may require, in the exercise of his discretion, the deposit of other securities, or the execution of a new bond.

These suits were predicated upon an alleged breach of the following conditions of the qualifying bond, as executed by the American Indemnity Company:

"Now therefore if said principal shall promptly pay when due all claims and obligations arising or accruing in this State by virtue of any bond or contract made by the principal, and all amounts due the State of Arkansas by virtue of any statute, and in all respects comply with

the laws of this State, then this obligation shall become void, otherwise to remain in full force and effect.''

The complaint alleged the insolvency of Walker and Union Indemnity Company, and that it became the duty of the American Indemnity Company to pay maturing claims and obligations arising or accruing by virtue of the Union Indemnity Company's bond or contract.

For the purposes of discussion, we may treat the bond sued on herein as if it expired by force of law on March 14, 1932, the date the new bond was executed and filed. Then, as to the question of liability upon appellant's bond to the date of its expiration, and under the terms of the bond, quoted above, we would be impelled to hold that if these claims, later reduced to judgments, arose or accrued prior to March 14, the surety company would be liable, though the obligation might not be payable until long after the expiration period of the bond. It is argued seriously, by appellant, that the execution of the new bond operates to discharge the liability of the old, and the new bond becomes liable for all of the accumulated liabilities to the date of its execution, and during such time as it may run. It is contended that this liability is contingent upon the accrual of a cause of action and maintenance of suit before a new bond is filed. We confess that this argument carries with it considerable force, and this is particularly true when we consider that, instead of the bond, the surety or guaranty company desiring to qualify could have placed with the Treasurer of the State the $50,000 worth of securities and later, upon the expiration date, if there were one, it might execute then a surety or guaranty bond, or withdraw the original securities and put up new or different securities that would meet with the approval of the Insurance Commissioner. In the event of such arrangements, it may well be argued that there would never be available to the obligees of the surety company, an amount in excess of $50,000, and that amount therefore is the total limit required for suretyship.

The presentation of the foregoing argument or statement is made upon a supposition that we would treat, as in this case, the 14th of March, the date of the new bond,

as an end of the term of the suretyship. We now call attention to the fact that that is a false premise, upon which the argument is founded, and, however plausible the argument may have seemed to appear, it must fail. The effect of the contract was to pay such claims as might arise or accrue under the bond, the payment to be made, however, at maturity of the debt. This may be illustrated by a suggestion that appellees in this case could have been employed at the times and worked for the same number of hours as they did, under an agreement that they would be paid at a certain date, long after March 14th. At the end of each unit for which each laborer had worked, whether hour or day, if each were given a due bill for the amount accruing for that period, but payable after March 14th, no one would have the temerity to suggest that the claim did not arise while the bond was in full force and effect, and that consequently liability would necessarily follow, unless released by the execution of a new bond. Such release is not provided for by the statutes.

Learned counsel suggest that the case of *Mass. Bonding Company* v. *Home Life & Accident Company*, 113 Ark. 576, 168 S. W. 1062, furnishes a rule for our guidance in a determination of this difficult question. The bond, however, in the above-cited case was one that had a definite and certain term, and no liability or claim could arise or accrue after the end of that term. The fixing of the definite and certain term is a matter that furnishes reasons for the rule announced in that case. The $20,000 bond was the amount of security for the protection of obligees for a period of a year. This bond might be much better security and provide greater protection for obligees of the insurance companies required to execute such bonds, than would be furnished obligees of guaranty and surety companies, when the same surety or guaranty company might or could remain on the same qualifying or sustaining bond, for a period of four or five years, or even longer. This fact alone is sufficient to justify the court in saying:

"The only consistent interpretation of that scheme is that successive bonds extinguish the liability of sure-

ties on the preceding bonds. The provision continuing the force of the bond during the lifetime of any policies issued during the period it covered was meant merely to continue that liability until it was extinguished by a renewal. We think this carries out a consistent scheme, and that it was what the Legislature intended." *Mass. Bonding Co.* v. *Home Life & Accident Co., supra.*

That construction is perhaps a declaration most favorable to the obligees that could be placed upon the bond, as it does permit or allow a $20,000 bond that will cover the annual or yearly liabilities.

The provision of the bond sued on here is an obligation to pay at maturity claims that arise or accrue while the bond is in effect, so it must appear that there is no question of the liability of the appellant here for such part of the obligation as may have accrued prior to and including March 14, 1932.

The remaining question to be settled is the one of appellant's liability for labor done and performed after March 14, 1932, by any and all of the appellees. It is argued by the appellees that the appellant here could not exempt itself from liability of the amount of indebtedness accruing after March 14th, by the substitution of another bond for the one it had executed. This is not quite a fair statement of the situation. According to the record, as abstracted for our consideration, there is nothing here to show that the American Indemnity Company substituted another bond. In fact, there is no disclosure as to why the new bond was executed with the Independent Indemnity Company thereon as a surety. If we should follow the express provisions of the statute in order to arrive at a presumption, we might presume that the Insurance Commissioner required the execution of a new bond, because of the fact that he may do so, if he deems the bond in force not sufficient or insecure.

The American Indemnity Company may have demanded its release and the Union Indemnity Company, as a mere matter of accommodation, may have executed a new bond with the Independent Indemnity Company as its surety. On the other hand, the Union Indemnity Company may have preferred, on account of some matter

wholly unknown to the Insurance Commissioner, or others than themselves, to substitute a new bond. Whatever the reason, or even if there were not any, a new bond was substituted. No presumptions or speculations need be indulged. The Insurance Commissioner did not attempt to discharge or release the appellant company. If the appellant was released, his release came by operation of law growing out of the intendment and conduct of the parties interested.

We are unwilling to say that the appellant company was so bound that it could not be released or discharged. We think such release or discharge would be from obligations or claims that might arise or accrue from and after the date of the filing of the substituted bond. It would not be a release or discharge of the liability that had already arisen and accrued prior thereto. The weight of authority seems to be, quoting from *Lawrence* v. *American Surety Co. of N. Y.*, 88 A. L. R. 535, 541: ''On the other hand, a surety, bound for an indefinite and contingent liability, where the bond has no definite time to run, may end his future liability by giving reasonable notice of withdrawal.''

A number of cases are cited sustaining the text above quoted. To the same effect, applicable here, is 18 C. J., page 589, § 63, and authorities there cited are well in conformity with this conclusion. See also 21 R. C. L., 983, § 32.

It must be said then that the weight of the authority is to the effect that sureties upon these bonds, of contingent liability and for indefinite periods, even though there be no cancellation provision, may be released after proper and reasonable notice. Such release violates no rights of the appellees here, since the law authorizes the release in proper cases. They contracted with Walker, whose contract was secured by bond of the Union Indemnity Company. Walker's surety could not be released without consent until full performance, but a different rule prevails as to the qualifying or sustaining bond made by the American Indemnity Company, and appellees must be said to have contracted with reference to the

law permitting a release or discharge upon notice, and by the substitution of the new bond.

Appellant was bound by its written obligation, but further appellees must be deemed to have dealt with all parties according to law forming a part of such contracts. They were confronted with the legal proposition that sureties, such as appellant, in this kind of case might properly be released. After March 14, 1932, the American Indemnity Company, bound prior thereto, because it was upon the bond, was discharged because it was no longer surety. Work was done from and after that time, and all claims for that work, subsequent to that date, were those that arose and accrued at a time when the appellant here was no longer surety.

Since we do not know that wages paid for the labor performed were uniform or the same after March 14th as were prior thereto, we are unable, except by surmise, to determine the amount of liability accruing to date of March 14th, and on that account cannot render judgment here.

The decree rendered in this cause for the several appellees is therefore reversed, and the cause is remanded, with directions to enter judgment and decree against the appellant for labor done and performed prior to and including March 14, 1932. Appellant is not liable for labor performed after that date.