COMMISSIONERS OF SINKING FUND OF
LOUISVILLE, KY. v. ANDERSON
et al.

AMERICAN BONDING CO. v. SAME.

Nos. 705, 700.

District Court, W. D. Kentucky.

July 21, 1937.

218

Bruce & Bullitt, of Louisville, Ky., for American Bonding Co.

Rowan Hardin and Mark Beauchamp, both of Louisville, Ky., for Board of Sinking Fund Com'rs.

Nichols, Morrill, Wood, Marx & Gintner, of Cincinnati, Ohio, for receiver.

Blakey, Davis & Lewis, of Louisville, Ky., for Hartford Accident & Indemnity Co. and Union Indemnity Co.

HAMILTON, District Judge.

The above cases, because of similarity of issues, have by agreement of parties been consolidated for hearing with separate judgments to be entered in each. Action No. 700 depends in a large measure on the outcome of No. 705, and this opinion is directed first to the matters in controversy in that action.

The city of Louisville is a municipal corporation of the first class, as provided under the Constitution of the commonwealth of Kentucky. As a part of its government, article 28, section 3010-1 to and including 3024a-10, Carroll's Kentucky Statutes 1936 Edition, provide for a sinking fund to pay the bonded debt of the city. A sinking fund commission is provided under this act, composed of the mayor, the president of the board of aldermen, and three additional members elected by ballot of the board. The commission thus created has corporate powers and is authorized to sue and be sued under the name of "The Commissioners of the Sinking Fund of the City of Louisville, Kentucky, a public corporation."

Section 3010-1 to and including section 3010-19 of this act comprise parts of the charter of the cities of the first class of the commonwealth of Kentucky. A part of this statute creates a sinking fund for cities of the first class to be applied on their bonded indebtedness respectively as it matures, and also for periodic payment of interest thereon. "The Commissioners of the Sinking Fund" is an administrative agency. Its duties are outlined in the statutes referred to, including what it may do with sums temporarily held by it for investment. Such funds may be deposited in a state or national bank located in the city of Louisville. As to these deposits, it is prescribed in section 3010-12 as follows:

"The commissioners of the sinking fund shall deposit the funds in their hands as commissioners in some incorporated bank, state or national, located or doing business in said city. The bank selected by the commissioners aforesaid shall give bond with good and sufficient security to secure the said commissioners the payment of all moneys and other things of value deposited by them with such bank; and upon such bond recovery may be had for any breach of the conditions thereof by suit in any court of competent jurisdiction. The moneys or other things of value belonging to the sinking fund, or which may be placed to the credit of the commissioners of the sinking fund, can only be withdrawn upon the order of the treasurer and secretary, approved and certified by the president of the commissioners of the sinking fund."

As to investments, the act provides (section 3010-9) as follows:

"The funds, estate and income belonging now or hereafter to said fund shall be and is vested in and be under the control and management of the board of commissioners for the purposes herein declared; and if injured, withheld or abstracted, said board of commissioners may sue for and recover the same or any part thereof in their corporate name. The said commissioners shall apply said fund to the payment of the city's debts chargeable on the same, when they can do so on fair terms; but whenever there shall be a surplus of said fund, which cannot be applied on fair terms to the extinguishment of said liabilities, the said commissioners may invest the same in bonds of said city, or for which it is bound, or bonds of the state of Kentucky, or in United States bonds."

The National Bank of Kentucky was a corporation created under the laws of the United States under the National Bank Act (12 U.S.C.A. § 21 et seq.). On November 15, 1930, it closed because of insolvency, and was placed in the hands of the comptroller of the currency for liquidation. Some time prior to its closing, it had been designated as a depositary by the commissioners of the sinking fund of the city of Louisville, and at that time the sinking fund had a balance on deposit of $858,952.48.

This sum was distributed to the following accounts:

| | |
|---|---|
| General Fund Account........ | $166,275.99 |
| Sewer Bonds 1907 Issue...... | 58,930.91 |
| Sewer Bonds 1920 Issue...... | 140,220.56 |
| School Bonds 1922 Issue...... | 84,954.71 |
| Memorial Bonds 1924 Issue... | 27,018.56 |
| Sewer Bonds 1925 Issue...... | 127,632.08 |
| Grade Crossing Bonds........ | 138,489.18 |
| Sewer Bonds 1929 Issue...... | 46,116.40 |
| Hospital Bonds ............. | 41,002.36 |
| Louisville Water Co. 1906 Issue | 14,135.73 |
| Louisville Water Co. 1910 Issue | 14,176.00 |
| Total ................... | $858,952.48 |

To protect the commissioner's deposits, the bank, with the American Bonding Company as surety, executed a bond to the sinking fund in the penal sum of $75,000 as of December 1, 1929, for the period to and including December 1, 1930, and on July 12, 1930, another bond for the same purpose in the penal sum of $25,000, expiring July 12, 1931.

On March 11, 1931, the American Bonding Company paid to the commissioner of the sinking fund $101,500, which included the full principal of its two bonds and $1,500 interest thereon. The National Bank of Kentucky was also designated as depositary by the commissioners for the calendar year 1928. On or about December 1, 1928, the bank executed to the commissioners its bond in the penal sum of $75,000 for a period of one year with the Hartford Accident & Indemnity Company and the Union Indemnity Company as sureties. Nothing has been paid to the city on this bond. On December 1, 1928, the commissioners of the sinking fund had on deposit with the National Bank of Kentucky $537,911.17. On November 13, 1929, it had $761,967.48 and on July 12, 1930, $936,887.27.

For a long time prior to the closing of the bank and at the time it closed, it owned the following bonds of the city of Louisville:

| | |
|---|---|
| City of Louisville, 3½% 1903 Issue, maturity 1943........ | $ 14,000.00 |
| City of Louisville, Hospital, 4½% 1911 Issue, maturity 1941 ...................... | 20,000.00 |
| City of Louisville, Refunding, 3½% 1901 Issue, maturity 1941 ...................... | 13,000.00 |
| City of Louisville, Refunding, 3½% 1901 Issue, J. D., maturity 1941 ............... | 53,000.00 |
| City of Louisville, School, 4½% 1913 Issue, maturity 1954 ...................... | 10,000.00 |
| City of Louisville, School Improvement Bonds, 5% 1922 Issue, maturity ............ | 5,200.00 |
| City of Louisville, Sewer, 4% 1907 Issue, maturity 1947... | 25,000.00 |
| City of Louisville, Sewer and Park, 3% 1901 Issue, maturity 1941 ................... | 29,000.00 |
| Total ................... | $169,200.00 |

These bonds were carried in the investment ledger of the bank and were acquired by it from the National Bank of Commerce in 1919. During the pendency of these actions, by agreement of the parties, the receiver of the National Bank sold them, collected matured interest, and agreed to hold the proceeds of the respective bonds separately to be applied in accordance with the final judgment of the court as to set-offs.

After the closing of the bank, its receiver paid a dividend of 67 per cent. to the commissioners of the sinking fund on the following accounts:

| | |
|---|---|
| Sewer Bonds, 1920 Issue...... | $140,220.56 |
| Memorial Bonds, 1924 Issue... | 27,018.56 |
| Sewer Bonds, 1925 Issue...... | 127,632.08 |
| Grade Crossing Bonds........ | 138,489.18 |
| Sewer Bonds, 1929 Issue...... | 46,116.40 |
| Louisville Water Company, 1906 Issue ................ | 14,135.73 |
| Louisville Water Company, 1910 Issue ................ | 14,176.00 |
| | $507,788.51 |

At the time this dividend was paid, $119,000 was deducted from the general fund account by reason of plaintiff's claims of set-off, and a dividend of 67 per cent. paid on the balance of $47,275.99. There was also deducted at this time, for the same reason, from the school improvement 1922 issue $5,200, leaving a balance of $79,754.71, and a dividend of 67 per cent. was paid on this sum. There was also deducted from the sewer bond issue of 1907 account $25,000, leaving a balance of $33,954.71 and a dividend of 67 per cent. was paid on this sum.

There was deducted from the hospital bond account $20,000, leaving a balance of $21,002.36, and a dividend of 67 per cent. was paid on this sum.

The aggregate deductions ($169,200) on which the 67 per cent. dividend was not

paid equaled the par value of the bonds owned by the bank, and were retained by the receiver by consent of the parties until the question of offset was decided. The dividend on deposits was accepted by the city without prejudice to its claims of preference or offset.

On the foregoing facts, the plaintiff, the commissioners of the sinking fund, in action 705, claims it is entitled to a preference in the liquidation of the bank to the extent of its deposit of $758,952.48. Its contention is based on the provisions of section 3010-12 of Carroll's Kentucky Statutes, 1936 Edition, which provides:

"The bank selected by the commissioners aforesaid shall give bond with good and sufficient security to secure the said commissioners the payment of all moneys and other things of value deposited by them with such bank."

The commissioners construe this statute to require the bank to furnish a bond for the aggregate total of all deposits made by it, and claim, as the bond was for a less sum, the bank became a trustee ex maleficio.

In the case of the Louisville Trust Company v. Commissioners of Sinking Fund, 260 Ky. 219, 228, 84 S.W.(2d) 30, 33, decided June 21, 1935, the Court of Appeals of Kentucky had before it for construction the statute here involved. In that case the commissioners had proposed to deposit with the Louisville Trust Company $1,000,000 which could not be applied to the payment of the city's bonded indebtedness not then due "on fair terms." The Louisville Trust Company proposed to secure the deposit by placing $250,000 in United States bonds in a safety box under the joint control of it and the commissioners. The action was submitted to the court for a declaratory judgment. The court in construing the statute to not require surety equal to the deposit said:

"What is meant by the phrase 'good and sufficient security' as contained in section 3010-12, supra? As we have seen, it is contended by counsel for the commissioners that the phrase contemplates security of the actual value of the entire deposit, or a 100 per cent coverage; whilst counsel for plaintiff with equal vigor argue that the phrase contemplates only a security in an amount to accomplish the end and purpose in taking it, and that such purpose is when the amount of the security demanded and given, plus reasonably anticipated liquidating dividends in case of liquidation of the depository, makes it reasonably certain that the collection of the amount deposited when it becomes due and payable will be forthcoming. The sources that may be looked to in fixing the amount of the security embraces the amount and solvency of the assets of the depository, its indebtedness, the business-like method by which it is operated, and other material facts. In other words, counsel for plaintiff take the position that the commissioners, in exacting and demanding security for the deposit of the nature of the one here involved, are vested with a sound discretion to be regulated and exercised in the light of the facts that we have enumerated, and that the language under consideration does not exact or require of them the taking of security for the deposit of 100 per cent. coverage. Our conclusion is that such position is the correct one. * * *

"The descriptive words of the security that is required are 'good' and 'sufficient.' The one applies to the quality of the security of whatever amount that may be taken, and the other applies to the quantity of security. It is not pretended in this case that the proposed security of $250,000 of United States bonds is not 'good,' and we are not, therefore, concerned with the quality of security proposed to be taken under the involved contract; the contention arises exclusively as to the sufficiency or quantity of security. To begin with, if the Legislature intended in the enactment of section 3010-12 to prescribe for a 100 per cent. coverage, it would have been an easy and simple matter to have said so in unmistakable terms. All that would have been required was the insertion of the phrase, following the word 'security,' 'equal to the amount deposited,' or 'equal to the deposit,' or some other short and direct expression that would have dissipated all questions of doubt. It did not do so, but employed general terms instead, and which, under the universal rule of interpretation of statutes, must receive their common and ordinary acceptation. Webster's dictionary, Bouvier's and Black's law dictionaries, text-writers, and courts all define the word 'sufficient' to mean 'adequate, enough, equal to the end proposed, and that which may be necessary to accomplish an object.' The purpose in requiring any security is to create a situation that will enable the depositor (commissioners in this case) in the light of all rea-

sonable probabilities, to regain the amount of the deposit if it should not be paid on request or demand when it becomes due, and whatever suffices for that purpose meets the requirements of the statute, since it is our conclusion that the word 'sufficient' embraces no more than that which furnishes a plentitude and which, when done, suffices to accomplish the purpose intended in the light of present conditions viewed through the eyes of practical and cautious men."

The construction of a state statute by the highest court of the state is binding on the federal courts, unless so unfair and unreasonable as to obstruct a federal right. I believe the interpretation of this statute by the Court of Appeals is correct. It follows that the commissioners are entitled to no preference over other depositors in the liquidation of the bank.

The commissioners of the sinking fund make the further contention that it is entitled to set off the $169,200 of city bonds owned by the bank at the time it closed against the deposit to the credit of the sinking fund.

The bonds were a charge on the sinking fund and each issue was supported by an ordinance levying a tax payable into the sinking fund to be used by it in paying current interest, and the retirement of the bonds at maturity. Thus the $14,000 city of Louisville 3½ per cent. bonds maturing in 1943; the $20,000 city of Louisville hospital 4½ per cent. issue maturing in 1951; the $13,000 city of Louisville, refunding, 3½ per cent. 1901 issue maturing in 1941; the $52,000 city of Louisville refunding 3½ per cent. 1901 issue, J. D., maturing in 1941; $10,000 city of Louisville school, 1913 issue maturing in 1954; $5,200 city of Louisville school improvement 5 per cent., 1922 issue maturing in 1954; $25,000 city of Louisville sewer, 4 per cent. 1907 issue maturing in 1947; $29,000 city of Louisville sewer and park, 3 per cent. 1901 issue maturing in 1941.

All taxes levied for the payment of principal and interest when collected were paid to the sinking fund. All sums were first deposited by the commissioners in an account in the respective depositaries designated "General Fund Account." Out of this account, salaries and expenses of the sinking fund, and interest on all bond issues were paid. At the discretion of the commissioners, the general fund account was distributed to the respective bond ac-

counts. The commissioners had no power to call for payment any issue of bonds before maturity, but it was authorized to apply the sinking fund to the payment of the city's debts chargeable against it when it could be done on fair terms. It was further authorized to invest surplus funds in the city's bonds.

The defendant contests the right to set-off as to the whole amount on two grounds. First, that the commissioners of the sinking fund is a separate corporate entity from the city of Louisville; second, the principle of equitable set-off is not supported by the facts. Finally, it is contended by the defendant that in no event can there be an offset except as to hospital bonds of $20,000; city of Louisville sewer 1907 issue $25,000; City of Louisville school improvement 1922 issue $5,200, because there had been no allocation out of the general fund account except as to these particular issues of bonds.

Taking up the first contention, that the commissioners of the sinking fund is a separate corporate entity from the city of Louisville, it may be said it is an arm of the city government, performing one of its functions. It is what is known in law as a quasi corporation. For convenience, it was incidentally given the qualified capacity to sue and be sued. It possesses none of the powers ordinarily conferred on corporations, but is an agency of the city in the administration of its government; has no capital stock, no stockholders, and no board of directors; and no financial resources except those arising from public taxation. The statutory laws creating the commissioners and defining its duties are all in the statutory charters of cities of the first class. It was no more a separate entity from the city of Louisville than the treasurer of the municipality. The commissioners of the sinking fund is the city of Louisville. See Barnes v. District of Columbia, 91 U.S. 540, 556, 23 L.Ed. 440.

The right of set-off is a creature of equity, and is applied independently of the limitation that attaches to legal or statutory set-offs. Equity will take cognizance of a cross-claim against litigants though wanting in mutuality and set-off one against the other whenever it becomes necessary to do clear equity or prevent irremediable injustice.

The defendant insists that equitable set-off is not allowable under the facts here.

because of a lack of mutuality, and further that the obligations of the city are not yet due.

The National Bank of Kentucky for several years had been one of the depositaries of the sinking fund commissioners and had the use of large sums of money from this source.

This is an action to conserve assets accumulated for the protection of the bondholders of the city, and the court, unless compelled to do so, should not diminish the doctrine of equitable set-off on theories advanced by the defendant, not for the benefit of the owners of the securities of the municipality. For reasons heretofore pointed out, there is no lack of mutuality. When the doctrine of separate legal entities is carved out of the case, the city was the creditor of the bank and the bank owned its obligations. The mutuality of obligations is clear.

In the case of Marmarth School District No. 12 of Slope County v. Hall, 65 N.D. 509, 260 N.W. 411, 414, 417, Supreme Court of North Dakota, the school district had borrowed $5,000 from the bank on its certificate of indebtedness. Prior thereto the county treasurer, as custodian of the school district sinking funds, deposited in the bank $6,300 for which three certificates of deposit were issued. The bank went into receivership with the money due the school and with the school debt unpaid to the bank, but not due. Hall, the receiver of the bank, presented the certificate of indebtedness to the county treasurer and requested priority as to payment from tax collections made for the school. The county treasurer alleged the school district was entitled to an offset of the amount due on its sinking fund deposit to the extent of the certificate of indebtedness, which the receiver refused. The bank had furnished a depositary bond to secure the payment of the sinking funds, but the sureties were "judgment proof" and a judgment against them would have been worthless.

The court, in allowing the offset, said:

"Equity will allow a set-off of mutual accounts against an insolvent party, when the claim of one asserting the right of set-off has matured; it being immaterial that the claim against him has not matured. Gerseta Corporation v. Equitable Trust Co. et al., 241 N.Y. 418, 150 N.E. 501, 43 A.L.R. 1320.

"Appellant says there is no mutuality of account, Equity will take cognizance of a cross-claim between litigants, though wanting in mutuality, and set off one against the other, whenever it becomes necessary in order to effect a clear equity or prevent irremediable injustice. City Inv. Co. v. Pringle, 73 Cal.App. 782, 239 P. 302; Porter v. Roseman, 165 Ind. 255, 74 N.E. 1105, 112 Am.St.Rep. 222, 6 Ann.Cas. 718; Berger v. Clendinen, 88 Md. 151, 40 A. 705.

"The doctrine of mutuality of accounts has a different application in equity cases than it has in legal. While mutuality of accounts is necessary in law, yet this theory of necessity of mutuality as a basis of set-off is not binding on courts of equity, and equity will take cognizance of cross-claims between litigants though wanting in mutuality, and offset the same if necessary to effect clear equity or prevent irremediable injustice. Cooper v. Fidelity Trust Co., 132 Me. 260, 170 A. 726, 729.

"While in some jurisdictions it is the rule that to permit set-off claims must grow out of the same transaction, nevertheless it is held in Heflin v. Heflin, 222 Ala. 662, 134 So. 20, that equity will permit a set-off as at law though the set-off grows out of an independent transaction. Indeed, equity is not shown to be concerned with the origin of the claim. It is held in Johnston v. Grimm et al., 209 Iowa, 1050, 229 N.W. 716, that in proceedings in courts of equity both recoupment and set-off may be applied. In First National Bank of Windom v. Consolidated School Dist. No. 28, 184 Minn. 635, 238 N.W. 634, 240 N.W. 662, an action was brought by the bank against a school district to recover on school warrants issued by the school district. It appears the tax funds had been deposited in the bank and that they were embezzled by the bank cashier who was also the school treasurer. The court held that the school district, when paying these warrants, was entitled to a legal set-off for the tax embezzled. It is not shown that the taxes deposited were for any special purpose. They were collected for the general fund of the school district; but they were a general deposit. The court did not consider that this was the payment of a debt by set-off, though in effect it amounted to this. The case was before them on the broad principle that the cashier of the bank misused the fiduciary or trust funds; the bank knew this and participated in the misconduct

which resulted in liability. The court says (238 N.W. 635): 'Under the circumstances, on this theory of the case, an equitable set-off was available to the defendant at the time when plaintiffs purchased their warrants.'

"When we brush aside any claim which the bank makes to represent the bondholders, we find that the real relationship is between the school district and the bank. The former owes the certificate of indebtedness to the bank. The latter owes to the school district the amount due on the certificates of deposit, even though they were issued in the name of the county treasurer. The certificates show the bank knew the funds were the funds of the school district. Even though strictly speaking and as a matter of law a set-off were not to be permitted in such a case as this, nevertheless there are many instances in which the concurrent jurisdiction of the court of equity is exercised 'because the legal remedy is inadequate, or because, through the imperfection of the procedure at law, a legal remedy would be wholly insufficient, if not impracticable.' 1 Pomeroy's Eq.Juris.(4th Ed.) § 189. In Union Stock Yards National Bank v. Gillespie et al., 137 U.S. 411, 11 S.Ct. 118, 34 L.Ed. 724, where a factor had deposited in his own name money collected as proceeds of sales for his principal in a bank that knew this fact, it was held a principal may maintain a bill against the bank to recover the money which had been applied on a debt due from the factor."

See, also, Mercer v. Dyer, 15 Mont. 317, 39 P. 314; Johnson v. Aberdeen, 147 Wash. 482, 266 P. 707; Maryland Casualty Co. v. Grays Harbor County, 159 Wash. 356, 293 P. 441; People ex rel. Nelson v. Joliet Trust & Savings Bank, 275 Ill.App. 138; Leonard v. Taylor, 183 Ark. 933, 39 S.W. (2d) 704; Coburn v. Carstarphen, 194 N.C. 368, 139 S.E. 596, 55 A.L.R. 819; Gray v. School District of Borough of Brownsville (C.C.A.) 67 F.(2d) 141, 144; Scammon v. Kimball, 92 U.S. 362, 371, 23 L.Ed. 483; Scott v. Armstrong, 146 U.S. 499, 513, 13 S.Ct. 148, 36 L.Ed. 1059.

The fact that the bonds owned by the bank are not yet due is not a bar to an equitable set-off. The "commissioners" were authorized under the statute to invest its bank deposits in bonds of the city of Louisville or to make payment "of the city's debts chargeable on the same."

The defendant is in no position to question what investments the "commissioners" make of the funds under its control, nor does the maturity of said bonds concern the receiver. The provisions as to payment of the bonds or the investment of taxes collected to liquidate them is for the city, through its agency the sinking fund commissioners, to decide, and if it wishes it may hasten the maturity of the municipal obligation.

The defendant is in no position to claim that it would be unfair to owners of similar bonds for the city to retire those owned by the bank. This matter affects the other bondholders, and they only can complain.

In the case of Hudson Co. v. Thomas (D.C.) 6 F.Supp. 857, 858, the plaintiff issued its serial 5 per cent. notes to the extent of $10,000,000. Simultaneously it executed a writing by virtue of which certain rights and obligations were imposed upon trustees therein named for the note holders. The trustee alone was empowered to recover upon the notes unless 25 per cent. of the holders requested it to act and it declined, in which event the bondholder was authorized to sue. Two banks owned $250,000 and $296,000, respectively, of the debenture notes, none of which were due. The banks closed, having deposits in one instance in excess of the notes, and in the other a substantial sum.

The maker of the notes sought to offset those owned by the banks against these deposits. Judge Lindley, in holding the offset proper, said:

"Inasmuch as none of these notes had matured when the banks closed, it is first questioned whether they can be set off as against the deposit account, which was payable on demand. I do not understand that the right to set off mutual cross-demands in equity is defeated by the fact that some part thereof has not matured. The postponement of date of payment here was intended for the benefit of plaintiff. Such privilege of paying later, being for its own advantage, may be waived, inasmuch as no damage accrues to defendants as a result thereof. The assertion of the right of one to waive something belonging to him requires no argument in support thereof. The rule is quite generally recognized in this country. Thompson v. Union Trust Company, 130 Mich. [508] 512, 90 N.W. 294, 97 Am.St. Rep. 494; Searle v. Crampton, 118 Conn. 42, 170 A. 480. In State ex rel. Gray v. Al-

224

ward, 44 Ohio App. 281, 185 N.E. 560, 562, the court said: 'The depositor might have had a time certificate of deposit not yet due at time of insolvency. He could not sue to recover it until due, but to say he had not a legal demand would be absurd.' * * *

"The same line of reasoning disposes also of the contention of defendants that inasmuch as the indenture provides that 'redemption' of an entire series of notes might be made but not of a part thereof, plaintiff may not now have a cancellation of a part of one series by set-off. This provision was not an exclusive one, granting only one method of payment, discharge, purchase, or redemption of notes. The noteholders could not be forced to accept payment before maturity without tender of unmatured interest; hence this provision was intended only as a grant of a special privilege to plaintiff to anticipate maturities upon certain fair conditions, if it found itself able to do so. The limitation that such redemption should be an entire issue, but not of a part, was obviously meant to prevent preferences amongst individual holders of notes of the same series. There is nothing to indicate that the distinction between 'redemption' and 'payment,' pointed out in Morgan v. United States, 113 U.S. 476, 5 S.Ct. 588, 28 L.Ed. 1044, and Pflueger v. Broadway Trust & Savings Bank, 351 Ill. 170, 184 N.E. 318, was not recognized. At any rate, the provision does not take the situation out of the rule governing equitable set-off of cross-demands to the effect that it is mutuality of obligations which controls; not limitation upon the legal right of action. The chancellor looks behind the legal provisions to discover the true equities of the parties; it is forced to recognize that the proposed set-off injures no noteholder but improves the position of every one still holding an unpaid note."

See, also, Carr v. Hamilton, 129 U.S. 252, 262, 9 S.Ct. 295, 32 L.Ed. 669; Clute v. Warner, 8 App.Div. 40, 40 N.Y.S. 392; Jones v. Piening, 85 Wis. 264, 55 N.W. 413; Yardley v. Clothier (C.C.A.) 51 F. 506, 510, 17 L.R.A. 462.

The final contention of the defendant that the offset, if any, is to be limited to bonds owned by the bank to retire which specific funds were on deposit, fails because all of these deposits in the bank belong to the city of Louisville, and the bonds owned by the bank were obligations of the city. This disposes of all the issues in No. 705.

The claim for preference by the plaintiff will be denied. Its claim for set-off will be allowed. Attorneys for the respective parties will prepare and submit to the court findings of fact and conclusions of law conformable to this opinion.

In action No. 700, the plaintiff, the American Bonding Company, makes three separate claims; (1) That it had a provable general claim against the receiver of the bank of $100,000 payable contemporaneously with the city's claim; (2) that it was entitled to an assignment from the city of its claim against the bank to the extent of $100,000; (3) that it was entitled to contribution from the sureties of the bank for the year 1928, based on undrawn deposits to the credit of the sinking fund commissioners and carried over into the period of its outstanding bond.

The bond given by the American Bonding Company contains the following provision:

"Now, therefore, the condition of this obligation is such that if the said principal shall safely keep and promptly pay upon proper check or order all money deposited with it by the Commissioners of the Sinking Fund of the City of Louisville, Kentucky, during the year commencing (Dec. 1, 1929 and ending December 31, 1930), including said interest and including all money and interest thereon now on deposit to the credit of said Commissioners, then this obligation shall be null and void, otherwise it shall remain in full force and effect."

After the closing of the National Bank of Kentucky, the American Bonding Company paid to the commissioners of the sinking fund $100,000. The principal amount of the two bonds on which it was surety for the bank. Subsequently it filed with the receiver a general claim of $100,000, and insisted that it be permitted to share in dividends pro rata with other general creditors of the bank, which was denied. It also demanded of the sinking fund commissioners that it execute and deliver to the plaintiff an assignment of a part of its claim of $100,000 against the receiver of the National Bank of Kentucky. The plaintiff also demanded of the Hartford Accident & Indemnity Company and the Union Indemnity Company, sureties for the bank for the previous year, contribution to the extent of the proportionate part of the deposits on

hand and carried over at the expiration of their bond.

Plaintiff under well-recognized equitable principles must be denied the right to participate in the distribution of the assets of its principal until its debt to the obligee is discharged in full. The plaintiff is not entitled to participate in the distribution of the assets of the National Bank of Kentucky until the claim of the city of Louisville against the National Bank of Kentucky is satisfied in full. Jenkins v. National Surety Company, 277 U.S. 258, 267, 48 S. Ct. 445, 446, 72 L.Ed. 874.

By the express terms of the bond, the American Bonding Company secured all money deposited by the commissioners of the sinking fund in the National Bank of Kentucky.

As I have heretofore pointed out, the statute under which the bond here in question was executed does not require security equal to the deposits. The commissioners of the sinking fund were obligated to take, and the depository to give, a bond only to the extent of securing the city against such loss as could reasonably be anticipated on liquidation of the bank. It necessarily follows that the plaintiff was not obligated proportionately to the extent of the deposit, but had indemnified the city against any loss it might sustain on the liquidation of the bank. It is not entitled to an assignment from the city or the board of sinking fund commissioners until the city is made whole. It, therefore, follows the plaintiffs claim for assignment is denied. Maryland Casualty Company v. Fouts (C. C.A.) 11 F.(2d) 71, 46 A.L.R. 852. At the close of business November 12, 1929, the commissioners of the sinking fund had on deposit in the National Bank of Kentucky $761,967.48. This deposit on that date was protected by bond of the bank for $75,000 with the Hartford Accident & Indemnity and the Union Indemnity Company as sureties, which on that date terminated and the new bond was executed with the plaintiff, the American Bonding Company, as surety. On November 13, 1929, the first effective date of the plaintiff's bond, the deposits of the commissioners in the bank remained the same, and did not fall below this sum before the bank closed.

The condition of the bond with the Hartford and the Union as sureties was as follows:

"Now, therefore, the condition of this obligation is such that if the said principal shall safely keep and promptly pay on proper check or order all money deposited with it by the Commissioners of the Fund of the City of Louisville, Kentucky, during the year commencing December 1, 1928 and ending December 1, 1929, including all moneys and interest therein now on deposit to the credit of the said Commissioners, then this obligation shall be null and void, otherwise it shall remain in full force and effect."

The plaintiff insists the above bond should be construed to insure the commissioners of the sinking fund against any loss on moneys deposited in the bank during its life, though subsequently sustained, and as the deposits in the bank at the time of its expiration continued therein until the date of closing of the bank, the plaintiff has discharged in part an obligation of the two earlier sureties and for that reason is entitled to contribution from them.

The rule of strictissimi juris does not apply to a surety for compensation but such a one is entitled to have its contract interpreted by the ordinary rules of law and its liability cannot be enlarged beyond the scope of the terms of the contract and where the language of the bond is plain, there is nothing to construe. The court need only to apply the language of the agreement to the facts.

The obligation here involved on its face fixed a definite period for which the surety guaranteed the acts of its principal, and there is no showing from the evidence that there was any default on the part of the principal during the time specifically fixed therein. The bank honored every check drawn by the commissioners within the period covered by it and so far as the record shows was solvent at the expiration date of the bond on which the plaintiff bases its claim for contribution. Yawger v. American Surety Company, 212 N.Y. 292, 106 N.E. 64, L.R.A.1915D, 481; Ida County Savings Bank v. Seidensticker, 128 Iowa, 54, 102 N.W. 821, 111 Am.St.Rep. 189, 5 Ann.Cas. 945; State, to Use of Blacker, v. O'Neill, 114 Mo.App. 611, 90 S.W. 410; American Indemnity Company v. Reed, 191 Ark. 556, 87 S.W.(2d) 1; Ulster County Savings Inst. v. Ostrander, 163 N.Y. 430, 57 N.E. 627; Peters v. Bechdolt, 100 Ind. App. 395, 192 N.E. 116; Blades v. Dewey,

136 N.C. 176, 48 S.E. 627, 103 Am.St:Rep. 924, 1 Ann.Cas. 379; First National Bank v. Briggs' Assignees, 69 Vt. 12, 37 A. 231, 37 L.R.A. 845, 60 Am.St.Rep. 922; Westervelt v. Mohrenstecher (C.C.A.) 76 F. 118, 34 L.R.A. 477; Stuck v. Dutton, 4 W.W. Harr.(Del.) 144, 144 A. 191.

The statutory requirement for a bond (section 3010-12, Carroll's Kentucky Statutes, 1936 Edition) does not provide a limit of time for the depositary bond or the period for which the depository shall be selected, but it was. the practice of the sinking fund commissioners to make a yearly selection and require a bond for the same period. This limited designation was written into the face of the bond as follows:

"Whereas, the said principal has been designated by said Commissioners of the Sinking Fund of the City of Louisville, Kentucky, a depository in which may be deposited money, checks, or drafts, belonging to said Commissioners, or under their control during the period of one year, commencing December 1, 1928 and ending December 1, 1929."

There is nothing in the conduct of the parties that would indicate the sinking fund commissioners intended to require cumulative sureties for its deposits. Checks were frequently drawn on the deposits which were made as taxes were collected. The status of the bank account was readily ascertainable at any time. While paid sureties should be held to strict accountability for the acts of the principal, their contracts should not be construed to cover an indefinite period of time, unless language is found therein to support such conclusion. No such language is found under the instrument here involved. Each successor surety obligated itself that the deposits on hand the date the suretyship contract became effective would be accounted for by the bank and I am of the opinion that the liability of the Hartford and the Union Companies terminated December 2, 1929, in the absence of a showing of a default on the part of the principal between December 1, 1928, and December 1, 1929.

If I should be in error in the construction of the bond, it would profit the plaintiff nothing. The sinking fund commissioners had on deposit when the bank closed $858,952.48. It has been allowed an offset against this sum of $169,200 leaving a balance of $589,752.48. On this sum a dividend of 67 per cent. has been paid amounting to $462,034.16. The plaintiff has paid to the sinking fund commissioners $100,000, which leaves the city lacking $127,718.32 of a full recovery.

The bond of the plaintiff, like that of the Hartford and Union, covered all of the sums on deposit when executed and those made during the life of the bond. If the earlier bond is liable to the city for the deposits on hand at its expiration date, the city has the right to look to it for an additional recovery but I am not deciding that question. In any view of the case, it cannot be said that the plaintiff has been called. on to bear a portion of the burden that should have rested on the Hartford and the Union. This being true, the plaintiff does not bring itself within the well-understood principle of equitable contribution.

Action No. 705 will be dismissed and the defendants recover their costs. The attorneys for the respective parties will find facts and conclusions of law conformable to this opinion, for submission to the court.